145 So.2d 259 (1962)
Jerry Lee NATIONS, Appellant,
v.
STATE of Florida, Appellee.
No. 3103.
District Court of Appeal of Florida. Second District.
October 3, 1962.
*260 Julius G. Petruska, of Rowland & Petruska, Orlando, and Leo W. Haley of Haley & Cooper, Orlando, for appellant.
Richard W. Ervin, Atty. Gen., George R. Georgieff, Asst. Atty. Gen., for appellee.
WHITE, Judge.
Jerry Lee Nations appeals his conviction and sentence on an information charging him with unlawful assault with intent to procure a miscarriage.[1] The appellant also has moved to strike defense counsel's argument to the jury as set forth in the record on appeal. This portion of the transcript is alleged to be inaccurate and, in effect, a fabrication as indicated by supporting affidavits. In disposing of this motion, we need only observe that it is not properly before this court. Rule 3.6(l) Florida Appellate Rules, 31 F.S.A.[2] sets forth the method for correcting the record on appeal, and absent amendment by that procedure the record must be presumed correct. The prescribed procedure requires submission of the matter to the lower court. This was not done.
The principal witnesses for the state were Dorothy Yohn, wife of an Orlando Police Department Lieutenant, and William *261 Robinson of the Orlando Police Department. They testified that they were led to Bremer's Pizza Palace by one Margaret Lou Mount, a codefendant whose trial was severed from that of the instant defendant. The witnesses stated that after they and the said Margaret Mount were seated at a table in the Pizza Palace they were joined by the defendant Jerry Lee Nations. There were no introductions other than a statement by Margaret Mount: "This is the couple I was telling you about."
The defendant, according to the testimony, then and there explained to Dorothy Yohn his method of operation. He would inject a pituitary extract in her arm which would cause her uterus to contract and expel the foreign body. He stated that the injection would also ease dilation of the cervix which he would complete by the use of instruments in order to insert a tube and packing. He asked if she was allergic to sulfa. After receiving a negative answer, he stated that he would provide her with two kinds of pills to fight infection and control hemorrhaging. He affirmed that he was not a doctor but had four years medical training and that he guaranteed this method which he had used many times. The defendant conducted the group from the Pizza Palace to an adjacent building. He carried a large blue suitcase which he placed on a drafting table. He removed a pair of stirrups, a pan, a pillow, a quilt and a small brown suitcase. Dorothy Yohn handed him $300.00 cash and promised to pay the $200.00 balance.
The defendant swabbed Dorothy Yohn's arm with alcohol. At this juncture officer Robinson stated that he was not feeling well and would like to have some air. The defendant unlocked the door, let officer Robinson out, returned to Dorothy Yohn and hypodermically injected a liquid into her arm. He was about to examine her further when there was a knock at the door. The defendant opened the door and officer Robinson reentered accompanied by a deputy sheriff. Officer Robinson announced who they were, and they thereupon arrested the defendant.
The arresting officers, after searching the room and adjacent areas, seized articles considered by them potentially pertinent to the prosecution of the defendant. There were no warrants, so the validity vel non of the search and seizure depends upon whether or not the search and seizure were legally incident to the arrest. Four of the defendant's twelve points on appeal question the legality of the search and the competence of the seized articles as evidence. The remaining eight points pertain to the court's denial of defendant's request to interview a state's witness who had been excused by the county prosecutor without being called to the stand, the propriety of (1) testimony of a doctor that certain exhibits could be used in procurring a miscarriage and (2) testimony of two witnesses tending to show similar previous conduct on the part of the defendant; also the propriety of certain remarks by the county prosecutor to the jury and the propriety of the sentencing. The points on appeal will not be treated severally in the numerical order set forth in the briefs but will be grouped and discussed under the foregoing headings.
The defendant first contends that it was error to deny his motion to suppress the evidence obtained pursuant to the search. The motion, as indicated, was grounded on the circumstance that there was no warrant of arrest and no warrant of search. The arrest appears to have been clearly coincident with an overt act indicative of an intent to commit a crime. The arrest therefore was valid. See Florida Statutes § 901.15, F.S.A.; Lashley v. State, Fla. 1953, 67 So.2d 648. This leaves for determination the question of the validity of the search and seizure. In Collins v. State, Fla. 1953, 65 So.2d 61, the Supreme *262 Court, speaking through Justice Thomas, said:
"We have held that a reasonable search and seizure may be made as an incident to a lawful arrest, * * * so the validity of the search in the present case should be gauged by the circumstances surrounding it * * *."
See also Urso v. State, Fla.App. 1961, 134 So.2d 810; 29 Fla. Jur., Search and Seizure, § 13. Thus pertinent evidence obtained as the result of a search is admissible if the search was reasonable; and the question of reasonableness is determinable on the basis of the particular factual situation. Chacon v. State, Fla. 1958, 102 So.2d 578. In the instant circumstance it would have been impracticable to procure warrants between the time officer Robinson first became aware that ostensibly a felony was being committed and the time that the principals likely would have departed the scene. Upon observing that the defendant was attempting a felonious abortion, officer Robinson made a momentary exit to secure aid, returned, placed the defendant under arrest, searched the premises and seized those articles which he considered important to the future prosecution.
The record discloses that Dorothy Yohn and officer Robinson knew that they were going to the Pizza Palace only twenty minutes prior to their departure for that place. They had no notice that they were going to the particular address where the alleged crime occurred until the defendant led them there. They went directly from the Pizza Palace to the premises where the abortion was to be performed. The arrest of the defendant being valid, a reasonable search without a warrant was permissible.
The defendant argues that he was arrested and removed from the premises before the search was completed, that the search was not limited to the room in which he was arrested and that he was given no receipt for the articles seized. These arguments are effectively rebutted by the record and the law. The articles were seized within premises sublet to the defendant. The items allegedly seized in unproximate areas appear not to have been used by the prosecution. It is not vital that the defendant was not given a receipt for the articles. See Dunnavant v. State, Fla. 1950, 46 So.2d 871; 29 Fla.Jur., Search and Seizure, § 30.
We perceive no error in the denial of defendant's request to interview a certain witness for the state who was excused by the county solicitor without the defendant's knowledge and consent. This defendant was jointly informed against and this particular witness was to be used in the trial of codefendant Margaret Lou Mount. The trials were severed and there was no indication that any testimony of this witness would be material, one way or the other, to the trial of the instant defendant. Moreover it was not shown that this defendant was denied the right to subpoena the said witness or any other witness in his own behalf.
Defendant next contends that the reception of the testimony of Dr. William Cheslock to the effect that certain exhibits could be used in procuring a miscarriage was error since the items in question were not specified in the information charging only the use of a hypodermic injection. It is notable that the defendant described to the prosecution witnesses his complete method of operation, the instruments and medicines that he would use. We have no doubt that these exhibits were competent evidence on the issue of intent. In other words, they were relevant and material to demonstrate that they were the instruments and medicines that the defendant had described. Accordingly the testimony of Dr. Cheslock was admissible as tending to identify the exhibits for what they were and that they were in fact usable in carrying out the defendant's plan as outlined to the prosecuting witnesses.
*263 In this connection the defendant also complains of the testimony of a witness with reference to similar methodical conduct of the defendant on previous occasions. This witness, a woman, testified that the defendant had performed an abortion on her and employed certain means and methods. It is urged that this testimony was prejudicial and incompetent. The testimony, however, was not offered to establish bad character or to prove separate offenses. The prosecuting witnesses had attested the defendant's recitation of his customary procedure and the instruments and medicines that he employed. Inasmuch as the described agencies could have been used for other purposes this additional testimony was relevant and competent to show intent, plan or scheme, and the general modus operandi of the defendant. See Williams v. State, Fla. 1959, 110 So.2d 654, 662; Green v. State, 1935, 121 Fla. 307, 163 So. 712, 714; Suarez v. State, 1928, 95 Fla. 42, 115 So. 519.
The defendant next protests the denial of his motion for a new trial based upon allegedly prejudicial remarks of the county solicitor before the jury. Defendant points to the solicitor's reference to "other like offenses." This point has been covered largely by the preceding discussion. Moreover the trial court plainly instructed the jury that this testimony could be considered only for the purpose of showing intent, plan, scheme or design. It is further argued that a mistrial should have been declared when the solicitor, in his closing argument to the jury, violated the provisions of Florida Statutes, § 918.09, F.S.A. prohibiting a prosecuting attorney from commenting on the failure of an accused to testify in his own behalf. The statement complained of is as follows:
"Now about money? Is this the way legitimate medical men operate, late at night, dirty little room, three hundred dollars in cash? Here's the money right here, three hundred dollars in cash. Defendant says `It's blood money.' I guess that's right, three hundred dollars. I'll take the money and Margaret Mount will collect the rest." (Emphasis added)
Defendant's counsel objected:
"Your honor, I want to record an objection and move for a mistrial. The prosecutor's remarks, `The defendant says it's blood money.' The defendant hasn't said one thing about that money."
Examination of the argument to the jury discloses that the prosecutor was referring to the chain of events as outlined by the witnesses. He was not referring to defendant's failure to testify. Moreover, in view of the following excerpt from defense counsel's closing argument the point is moot.
"* * * For example, gentlemen, there might be in your minds why didn't the defendant testify? You might feel why didn't he explain something? If you did, gentlemen, you told me when we originally selected the jury you wouldn't require him to present evidence or establish his innocence and I suggest to you gentlemen that you can't consider his failure to take the stand as proof of guilt * * *."
Counsel for the defendant went on to compare the $300.00 transaction with Judas and the 30 shekels. Clearly this is what the solicitor was referring to when he called the $300.00 "blood money."
This point is remarkably similar to that discussed in Pinkney v. State, Fla.App. 1962, 142 So.2d 144, 146. This court held that since defense counsel made it very clear to the jury that the defendant did not take the stand in his own behalf, affirmation thereof by the state's attorney did not constitute reversible error.
The last point concerns the propriety of the sentencing. It is argued that the defendant was improperly sentenced in *264 view of the court's denial of his request to present evidence of matters in extenuation and mitigation. Following the adjudication of guilt, the defendant requested the opportunity to show cause in mitigation pursuant to Florida Statutes, § 921.13 F.S.A.[3] The record shows the following:
"THE COURT: Defendant come forward.
"MR. HALEY: Your Honor, would you postpone sentencing as to such time we might show cause in mitigation and extenuation?
"THE COURT: No, sir, this is not the time to show anything, Mr. Haley.
"MR. HALEY: Could I place the defendant under oath, Your Honor, and present his 
"THE COURT: I don't understand that.
"MR. HALEY: All right, Your Honor, may I inquire of the defendant just to bring out these facts?
"THE COURT: Why don't you say what is to be said for him? He's been found guilty by the jury and adjudged to be guilty by the Court but anything you wish to say at this time Court will give you leave to go ahead and say it.
"MR. HALEY: Your Honor, I feel compelled to say this at this time; that the defendant had on the day this case was called for trial and prior thereto offered to plead guilty and throw himself on the mercy of the Court in return for certain considerations from the State, which was refused him. I ask that your Honor be as merciful as he can with the penalty imposed that Your Honor's considered judgment will permit.
"THE COURT: You see, this Court has to consider this defendant and the crime he has committed.
"MR. HALEY: I understand, your Honor.
"THE COURT: These other matters, what you said, couldn't have any bearing on what the Court does as far as this defendant is concerned.
"MR. HALEY: I understand, your Honor.
"THE COURT: Now, is there anything else to be said before the Court announces sentence?
"MR. HALEY: No, sir, your Honor.
"THE COURT: Then, Jerry Lee Nations having been tried and convicted at this term of court of the crime as charged in the information, the Court adjudges you to be guilty of the crime of unlawful use of a certain instrument with intent to procure a miscarriage of a woman, as charged in the information. It is therefore the judgment and order of this Court that you, Jerry Lee Nations, for the crime of which you have been convicted, be imprisoned by confinement at hard labor for seven years in the State Penetentiary."
We are constrained to hold that the trial court erred in denying the defendant an opportunity to present evidence in mitigation and extenuation. This was contrary to the intendment of Florida Statutes, § 921.13, F.S.A., supra. The defendant upon conviction was subject to imprisonment not exceeding seven years or by fine not exceeding $1,000.00. Thus the extent of the sentence was discretionary and within the ambit of Florida Statutes, § 921.13, F.S.A., supra. Cf. Davis v. State, Fla. 1960, 123 So.2d 703.
*265 The judgment of conviction is affirmed but the sentence is set aside and the cause remanded for the reception and consideration of mitigating evidence, if any, prior to resentencing.
Affirmed in part and reversed in part.
ALLEN, Acting C.J., and SMITH, J., concur.
NOTES
[1] Florida Statutes § 797.01, F.S.A.
[2] "Unless the record shows to the contrary, it shall be presumed, upon appellate proceedings, that the record transmitted to the Court contains all proceedings in the lower court material to the points presented for decision in the Court. * * * If any dispute arises as to whether any transcript truly discloses what occurred in the lower court, or is in conformance with any stipulation of the parties, the dispute shall be submitted to and settled by the lower court and the transcript made to conform accordingly." (Emphasis added)
[3] "When the court has discretion as to the penalty to be inflicted on the defendant it shall, upon the suggestion of either party that there are circumstances which may properly be taken into consideration, hear evidence as to the same summarily in open court, either immediately or at a specified time * * *." (Emphasis added)