279 So.2d 839 (1973)
Carey A. REAMS, Appellant,
v.
STATE of Florida, Appellee (Two Cases).
Nos. 42,282, 42,314.
Supreme Court of Florida.
July 5, 1973.
*840 Tobias Simon, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
McCAIN, Justice.
By direct appeal we have for review a judgment of the Circuit Court of Lake County, holding Fla. Stat. § 458.15, F.S.A. constitutionally valid on its face *841 and as applied to appellant. Although appellant continues to attack the validity of § 458.15 as applied to him, on this appeal he has abandoned his contention of invalidity per se. In Snedeker v. Vernmar, Ltd., 151 So.2d 439 (Fla. 1963) we specifically decided that an appeal from a judgment holding a statute invalid as applied to specific facts could be taken directly to this Court as one directly passing upon the validity of a statute. We continue to adhere to that view. Thus, jurisdiction over the cause vests in this Court pursuant to Fla. Const., Article V, Section 3(b)(1) 1973, F.S.A.
On October 11, 1971, Carey A. Reams was informed against in the Circuit Court of Lake County on five counts of practicing medicine without a license and one count of using the title "Doctor" in conjunction with the unauthorized practice of medicine. After trial by jury, he was adjudged guilty of all six counts and sentenced on the first count to a fine of one thousand dollars or one year in the county jail. On the remaining counts imposition of sentence was deferred, and appellant was placed on probation for a period of seven years. We reverse, for reasons stated hereinafter.
The testimony at trial was lengthy. Eighteen witnesses testified for the State; none testified for the defense. Reams himself did not testify. Of the five persons alleged in the information to have been diagnosed or treated by Reams, Otis Boyd, Ella Miller and Felita Foxwell all testified to their experiences with defendant. Mrs. Eva Allgood and Edward Fogg, Jr., did not testify but relatives appeared on their behalf. Additionally, various supportive witnesses, including several physicians who subsequently treated some of the defendant's patients, testified.
Much of the testimony was cumulative and overlapping. From it there emerged a definite pattern as to defendant's course of procedure with his patients. When a person with real or imagined health problems came to Reams' premises in Lake County for treatment, Reams administered certain tests, including urine and saliva tests and possibly blood pressure and eye examinations. Thereafter, Reams analyzed the results of the tests and diagnosed the patient's health problem. In the case of Otis Boyd, Reams diagnosed a "twisted colon"; Mrs. Allgood's problem was determined to be too much salt in her urine, which would produce a heart attack; Fogg's illness, including convulsions, resulted from the secretion of too much alcohol by his pancreas; Mrs. Miller was told she had diabetes, adhesions and an infection in the right breast; and Felita Foxwell was diagnosed as suffering from low blood sugar, an infection of the kidneys and some type of liver trouble.
Reams then suggested a course of treatment to be followed by the patient. Generally, the patient was advised to spend a week or two weeks at Reams' farm undergoing tests and following a healthful diet, and possibly taking vitamin supplements. Reams generally informed his patients that he could cure or substantially alleviate their difficulties if his recommended treatment were followed.
Had the state limited its presentation to the above testimony and supportive testimony by physicians, relatives and friends of the individuals concerned, we would have no difficulty sustaining Reams' conviction. Chapter 458, Florida Statutes, the Medical Practice Act, makes it unlawful for any person not holding a lawfully issued medical license in full force and effect to:
"(a) Practice or advertise to practice medicine;
"(b) Use in connection with his name any designation tending to imply or designate him as a practitioner of medicine;
"(c) Use the title `doctor,' or any abbreviation thereof in connection with his name, or with any trade name in the conduct of any occupation or profession, involving or pertaining to the public *842 health, or the diagnosis or treatment of any human disease, pain, injury, deformity or physical condition unless duly licensed by a board created under the laws of the state; ..." [Fla. Stat. § 458.15.]
The practice of medicine is defined by Fla. Stat. § 458.13(1), F.S.A. as follows:
"(1) Any person, except as hereinafter provided, shall be deemed to be practicing medicine within the purview of this chapter who holds himself out as being able to diagnose, treat, operate, or prescribe for any human disease, pain, injury, deformity or physical or mental condition or who shall offer or undertake, by any means or method, to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical or mental condition."
It seems clear that Reams "diagnosed" the health problems of his patients within the meaning of the Medical Practice Act. Black's Law Dictionary, Fourth Edition, 1968, defines diagnosis as "a medical term, meaning the discovery of the source of a patient's illness or the determination of the nature of his disease from a study of its symptoms. Said to be little more than a guess enlightened by experience." Reams' procedures fall squarely within this definition. He first conducted certain examinations on each patient, and after analysis of the results, purported to "discover the source of the patient's illness" and/or "determine the nature of his disease."
Moreover, insofar as he prescribed a proper diet to cure or alleviate the specific medical problems he diagnosed, Reams "treated" the illnesses of his patients. We reject the argument that because the substances "prescribed" were vitamins or food rather than "medicines" as that word is generally used, Reams did not treat diseases in the medical sense. We are persuaded in this respect by the arguments of the New Jersey Supreme Court, considering a statute similar to ours, in Pinkus v. MacMahon, 129 N.J.L. 367, 29 A.2d 885 (1943). In that case, in conjunction with the operation of a food store, defendant diagnosed shoppers' illnesses, prescribed a healthful diet and sold certain vitamin substances which he held out as having curative or restorative powers. The New Jersey court said, and we agree:
"Prosecutor [defendant] contends that there was no evidence before the trial court of any violation of the statute. In other words, he insists that the conduct described by the witnesses for the state board does not amount to the practice of medicine and surgery as above defined. We think it does. Whether or not the substances he sold and prescribed are to be classed as medicines or not makes no difference. Clearly prosecutor attempted to diagnose the `physical condition' of the witnesses and to ascribe a cause for its existence and prescribe for such condition.
"It is argued that prosecutor was merely engaged in the sale of food and food products, having special knowledge concerning food. But he went far beyond the mere sale of food when he diagnosed alleged ailments of the witnesses and expressed an opinion as to their cause. We think the practices engaged in by the prosecutor come within the inhibition of the act."
However, Reams argues that he is a "nutritionist", i.e. one who advocates nutrition as an aid to human health; that the value of nutrition to good health is generally conceded today; and that to the extent the Medical Practice Act fails to recognize such fact it invidiously discriminates against Reams. The record fails to support this argument. To sustain such an assertion, it is our view that Reams would be required to show, primarily through expert testimony, first, that there is a generally accepted definition of the term nutritionist; second, that Reams falls within such category; third, that "nutrition" or *843 "nutritionism" is a recognized medical or professional specialty in Florida; and last, that in spite of the recognition of such specialty, the state, through the Medical Practice Act, seeks to invidiously discriminate against it. He has shown none of these things. Bare assertions will not sustain appellant's burden of proof.
Appellant also urges that his conviction was error because he falls within an exception or exceptions to the Medical Practice Act. Inter alia, Fla. Stat. § 458.13(2) provides:
"(2) This chapter shall not be construed as applying to:
"(a) Any osteopath, chiropractor, podiatrist, naturopath, optometrist, psychologist, nurse, pharmacist, dentist, or midwife, duly and legally licensed by their respective state boards, when practicing their profession within the purview of the statutes applicable to their respective professions.
......
"(f) The practice of the religious tenets of any church in this state."
In our judgment, under the Medical Practice Act the state is required to prove only the elements of the crime charged: that defendant is not a licensed physician, but that he practices medicine within the statutory definition. Exceptions to the act must be raised and proved by the defense. In the instant case, the state proved at trial that defendant was not a licensed physician; defendant made no attempt to show that he was a qualified limited practitioner under Fla. Stat. § 458.13(2)(a), F.S.A., supra. Thus defendant failed to meet his burden of proof. The same argument applies to the practice of religious tenets. Defendant made no effort to demonstrate a viable connection between any church in this state and his purported medical practice. The testimony of the state's witnesses established no such connection. The record fails to support defendant's claim in this regard.
Finally, we turn to appellant's contention that the trial court committed prejudicial error in admitting, over strenuous defense objections, testimony relating to uncharged crimes. Insofar as appellant seeks to exclude the testimony of Mrs. Catherine McElroy and Mrs. Melba Quirante, we reject his arguments. That testimony was similar in content to the testimony elicited from the five witnesses who were the subjects of Counts I, III, IV, V and VI of the information and was admitted for the purpose of showing the general modus operandi of the defendant. Evidence of similar crimes is admissible for such a purpose. See Nations v. State, 145 So.2d 259 (Fla.App.2d, 1962); Cantrell v. State, 193 So.2d 444 (Fla.App.2d, 1966); Christie v. State, 246 So.2d 605 (Fla.App.2d, 1971); Green v. State, 121 Fla. 307, 163 So. 712 (1935).
However, the testimony relating to Anna King should have been excluded. Lawrence E. Johnson, an emergency medical technician, and his partner (an ambulance driver) testified that they received a call to send an ambulance to appellant's clinic. Upon arrival there, the two men discovered Reams sitting with his feet on his desk reading a newspaper. On a bed in the next room lay a partially clad teenage girl in an apparent diabetic coma. The witnesses placed the young woman in the ambulance and drove her to the hospital; but despite their repeated attempts to revive her, she was pronounced dead on arrival. No autopsy was performed.
Miss King's death was investigated by Douglas Sewell, a Lake County deputy sheriff. Sewell testified that he interviewed Reams in connection with Miss King's death and learned that Reams had known her only a short time, that she was staying at the clinic, that she was a diabetic and that she had refused to take her insulin.
*844 The above testimony was admitted on the state's assurance that it would be connected up and would show Reams' modus operandi. It was not connected up. There is nothing in the record to show that Miss King was ever diagnosed or treated by defendant, or that he in any way contributed to or caused her death. Although testimony relating to similar crimes is admissible to show a common scheme or design or the modus operandi of the defendant, there must be clear and convincing proof of a connection between the defendant and the collateral occurrences. Padgett v. State, 53 So.2d 106 (Fla. 1951); Norris v. State, 158 So.2d 803 (Fla.App. 1st, 1963). No such clear and convincing proof existed sub judice; the admission of the testimony was error. Moreover, we regard the testimony as inflammatory and highly prejudicial to defendant. Reams was portrayed as nonchalantly reading a newspaper with his feet up on his desk, while a half-naked teenage girl lay unconscious in the next room. The state witnesses twice testified to the fact that the girl was only partially clothed. The girl's subsequent death could not but have injected into the minds of the jurors the picture of a defendant indifferent to her fate, when in fact there was no testimony indicating that the young woman was under treatment by Reams. The combinations of Reams' suggested indifference, the vague sexual overtones conveyed by the girl's state of undress, and the girl's death all combined to prejudice defendant's right to a fair trial on the issues presented by the information. For this reason, a new trial is required.
Appellant's argument that the evidence at trial was insufficient to support his conviction of using the title "Doctor" in conjunction with the unauthorized practice of medicine is without merit. The evidence was clearly sufficient in this regard.
Accordingly, the judgment and sentence is reversed and the cause remanded to the Circuit Court of Lake County for new trial pursuant to this opinion.
It is so ordered.
CARLTON, C.J., ERVIN and BOYD, JJ., concur.
ROBERTS, ADKINS and DEKLE, JJ., dissent.