504 So.2d 45 (1987)
Roget I. SABASTIER, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-1677.
District Court of Appeal of Florida, Fourth District.
March 18, 1987.
*46 Harry Gulkin of Harry Gulkin, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Eddie J. Bell, Asst. Atty. Gen., West Palm Beach, for appellee.
LETTS, Judge.
The question presented is whether a person engaged in the practice of homeopathy can be convicted for practicing medicine without a license contrary to Chapter 458 of the Florida Statutes (1985). We agree with the trial court that homeopathy cannot be practiced without a license and affirm.
The appellant argues that he does not come within the purview of Chapter 458. We find no basis for this contention. The evidence clearly establishes that he was practicing medicine as defined in section 458.305(3), Florida Statutes (1985), and accordingly he was required to obtain a license under section 458.311.
Opposing this conclusion, the appellant responds that he cannot obtain such a license, even if he were to apply for it, because he is not a graduate from an "allopathic" medical school or college as required by section 458.311(1)(b). This may be so, but in the chapter, which includes the requirement that physicians must graduate from allopathic medical schools or colleges, the legislature has set forth the following:
458.301 Purpose.  The Legislature recognizes that the practice of medicine is potentially dangerous to the public if conducted by unsafe and incompetent practitioners. The Legislature finds further that it is difficult for the public to make an informed choice when selecting a physician and that the consequences of a wrong decision could seriously harm the public health and safety. The sole legislative purpose in enacting this chapter is to ensure that every physician practicing in this state meets minimum requirements for safe practice. It is the legislative intent that physicians who fall below minimum competency or who otherwise present a danger to the public shall be prohibited from practicing in this state.
We applaud this purpose which obviously promotes the health, morals and general welfare. Nevertheless, the appellant argues that such a statutory requirement invidiously discriminates against those who have not gone to allopathic institutions. We disagree. It is true that upon consulting the dictionary for the definition of "allopathic" we discovered that it is the exact opposite of "homeopathic." Allopathic treatment consists of the use of drugs, or agents, producing effects opposite from those of the disease, while homeopathy involves treatment by the use of remedies which actually produce, rather than oppose, in a healthy person, symptoms of the very disease being treated. Neither the record nor the briefs provide any clues as to why the legislature, in its infinite wisdom, has chosen the one over the other and we quite obviously are not qualified to make any choice on our own. Accordingly, no basis has been established to support invidious discrimination.
*47 If the appellant wishes to have his profession licensed and approved, he must apply to the legislature for this privilege, as has been done by those engaged in hypnosis, acupuncture, osteopathy and the like. Until he successfully does so, he is, in our opinion, governed by Chapter 458, "Medical Practice," which has already survived constitutional attack. See Reams v. State, 279 So.2d 839 (Fla. 1973).
AFFIRMED.
GLICKSTEIN, J., and GOLDMAN, MURRAY, Associate Judge, concur.