647 P.2d 419

Elizardo ARANDA, Plaintiff-Appellant,

v.

D. A. & S. OIL WELL SERVICING, INC.,
Employer and Employers Casualty Company, Insurer, Defendants-Appellees.

No. 5119.

Court of Appeals of New Mexico.

Feb. 9, 1982.

Rehearing Denied Feb. 22, 1982.

Certiorari Denied June 17, 1982.

Peter V. Culbert, Jones, Gallegos, Snead & Wertheim, P.A., Santa Fe, for plaintiff-appellant.

Richard W. Darnell, Neal & Neal, Hobbs, for defendants-appellees.

## OPINION

SUTIN, Judge.

Plaintiff appeals from a judgment rendered in a workmen's compensation case. We affirm in part and reverse in part.

A. *Decision of the Court.*

The court found that plaintiff was employed as a derrick hand and well service employee who suffered an accidental injury on April 23, 1979. His foot was caught and he fell backwards striking his back against the ground resulting in temporary total disability. Defendants paid plaintiff compensation until July 16, 1980. Payments terminated due to plaintiff's refusal to accept medical testing and treatment indicated by a myelogram, electromyelographic study and nerve conduction studies. The court considered this refusal to be arbitrary and unreasonable.

Dr. Maldonado wanted to do additional testing to determine the cause or causes of plaintiff's condition and to determine what treatment would help him. He would be 100% disabled for life and never know what, if any, treatment would help him become a productive member of society.

The myelogram is a standard and proper diagnostic tool for evaluating both scar tissue and the possibility of a reherniation of a disc. The milder complications of a myelogram such as headaches, nausea, vomiting, dizziness occur approximately 25% of the time and are usually shortlived. The more serious complications occur less than half of one percent of the time. Without additional testing, it was not possible to determine at this time the cause of plaintiff's increased symptomatology.

A myelogram would be a reasonable and proper next step in the treatment of plaintiff and is reasonably necessary to promote his recovery.

The court further found:

21. If Plaintiff does not submit to a repeat myelogram within six months from the date of entry hereof, then, in that event, at the end of six months after the date of entry, the payments of com-

pensation to which Plaintiff is otherwise entitled to from that time forward shall be reduced by fifty percent subject to the further order of the Court.

Additional findings were made on attorney fees and rehabilitation.

B. *The trial court erred in conditionally reducing plaintiff's compensation.*

In its judgment, the trial court ordered plaintiff to submit "to a repeat myelogram within six months" and if plaintiff failed to do so, payments of compensation shall be reduced by 50%. The trial court is mistaken. Section 52–1–51, N.M.S.A.1978, in one portion thereof, reads:

If any workman * * * shall refuse to submit to such *medical or surgical treatment* as is *reasonably essential to promote his recovery*, the court may in its discretion reduce or suspend his compensation. [Emphasis added.]

Defendants contend, in other words, the court may exercise its discretion and reduce compensation if (1) a myelogram is a "medical or surgical treatment" and (2) it "is reasonably essential to promote his [plaintiff's] recovery."

(1) *A myelogram is a medical or surgical treatment.*

■ Dr. Frank Maldonado, an orthopedic surgeon, designated by defendants to treat plaintiff, described a myelogram as follows:

The patient is taken to the Radiology Suite, usually as an in-patient in a hospital. A spinal puncture is done, which is placing a needle into the spinal canal. Some * * * spinal fluid is withdrawn * * sent to the laboratory, and a medium is placed into the spinal canal. The medium is a clear-looking liquid * * * causes a different opacity in the x-ray * * * is manipulated inside the spinal canal * * * and radiographs are taken in many different projections * * * we were using a water-soluble medium so it absolved by itself.

He then testified that "It's primarily a diagnostic procedure."

This procedure is described by definition of "myelography" in *Escobedo v. Agriculture Products Co., Inc.*, 86 N.M. 466, 525 P.2d 393 (Ct.App.1974). The court said:

The evidence supports the inference that the myelogram would be performed in a hospital and would require both a surgeon and a radiologist. Accordingly, we consider myelography to be in the nature of a surgical procedure. [Id. 470, 525 P.2d 393.]

The trial court found that a myelogram is a standard procedure that "would assist the doctors in diagnosing the cause of the Plaintiff's present complaints." Black's Law Dictionary (Revised Fourth Edition 1968), p. 540 defines "diagnosis" as:

A medical term, meaning the discovery of the source of a patient's illness or the determination of the nature of his disease from a study of its symptoms. Said to be little more than a guess enlightened by experience.

It is quoted in *Reams v. State*, 279 So.2d 839 (Fla.1973).

*People v. Cantor*, 198 C.A.2d Supp. 843, 18 Cal.Rptr. 363, 365 (1961) says:

"The word 'diagnosis' has an established legal meaning. It is the recognition of a disease from its symptoms; it is a part of the practice of the healing art. * * *" Diagnose is defined by Stedman's Medical Dictionary, 18th Ed. (1953) p. 381: "To determine the nature of a disease; to make a diagnosis", and "diagnosis" is "The determination of the nature of a disease. * * * " "Disease" is defined as "illness, sickness * * *, or an abnormal state of the body as a whole, continuing for a longer or shorter period." [Id. 395.]

In other words, a myelogram is a standard surgical procedure that would assist doctors in discovering the source of plaintiff's illness or sickness, or, from a study of the symptoms, a determination of the nature of his disease. It has been generally held that a myelogram is a "medical or surgical treatment." *Provident Life and Accident Insurance Co. v. Hutson*, 305 S.W.2d 837 (Tex.Civ.App.1957), 65 A.L.R.2d 1443 (1959); *McKay v. Bankers Life Com-*

*pany,* 187 N.W.2d 736 (Iowa 1971); *Mutual Life Ins. Co. of New York v. Bishop,* 132 Ga.App. 816, 209 S.E.2d 223 (1974), (dissenting opinion); *Aetna Life Ins. Co. v. Scarborough,* 556 S.W.2d 109 (Tex.Civ.App. 1977); *Barkerding v. Aetna Life Ins. Co.,* 82 F.2d 358 (5th Cir. 1936); *Order of United Commercial Travelers v. Shane,* 64 F.2d 55 (8th Cir. 1933).

These cases involve insurance policies which deny its benefits for any loss to which a contributing cause is "medical or surgical treatment."

In *Provident Life,* a doctor performed a pneumoencephalogram. It consists of making a spinal puncture in the lower lumbar region of the spine. A small amount of spinal fluid is removed and replaced with oxygen or air which arises and enables the ventricles of the brain to be x-rayed. It was a diagnostic test made to determine with greater accuracy the patient's physical condition and the cause thereof. The court said:

> We have concluded that the appellant is correct and we hold that the performance of the pneumoencephalogram under the circumstances shown above, constitutes medical and surgical treatment, as a matter of law. [305 S.W.2d 839.]

A myelogram is a similar surgical procedure. It falls within the category of medical and surgical treatment.

(2) *A repeat myelogram is not essential to promote plaintiff's recovery.*

The definition of "promote" includes "to further; to advance." *People v. Augustine,* 232 Mich. 29, 204 N.W. 747 (1925). "Essential" means "indispensably necessary; important in the highest degree; requisite." *Pittsburgh Iron & S. Foundries Co. v. Seaman-Sleeth Co.,* 236 F. 756 (D.C. Pa.1916). The question is:

Is a myelogram indispensably necessary to advance plaintiff's recovery? We believe not.

Dr. Maldonado was asked this question to which he made this answer:

Q. Does a myelogram itself in any way promote recovery itself?

A. No.

The reason is obvious. A myelogram indicates the source, if any, of the patient's illness. This indication, if shown, does not promote plaintiff's recovery. Its value depends upon any results shown. The radiologist or surgeon does not know what the results will be. The trial court did not order plaintiff to submit to any medical or surgical treatment that might be indicated by the results.

On June 8, 1979, Dr. Maldonado did the first myelogram and some other studies. It showed a deformity at the bottom joint of the spine on the left side. He felt plaintiff had a herniated disc and performed a lumbar discectomy, a spinal operation, on July 5, 1979. As of July 1, 1980, a year later, plaintiff remained totally disabled. Dr. Maldonado suggested a repeat myelogram and other studies to determine if there was a problem and, if so, how to help him. If not, Dr. Maldonado had to make a decision "that it's time to go to work." Dr. Maldonado's services ended and nothing further was done.

Dr. Zigmond Kosicki, an orthopedic surgeon, testified that if the second myelogram showed instability of the spine, a spinal fusion was the only alternative for surgical treatment, a major operation. A second fusion operation required when the first fusion does not work, increases the risks.

We find nothing in the record to support the trial court's finding "That additional testing of plaintiff is reasonably necessary to promote his recovery." We find nothing presented by defendants that a repeat myelogram is essential to promote plaintiff's recovery, nor the right of the court to exercise its discretion. The logical conclusion is that the trial court may not exercise its discretion to reduce plaintiff's compensation.

Defendants state:

> Whether a myelogram is included in the statutory term "such medical or surgical procedure" is a question of law. *Casados v. Montgomery Ward & Compa-*

*ny,* 78 N.M. 392, 432 P.2d 103 (1967); *Malone v. Swift Fresh Meats Company,* 91 N.M. 359, 363, 574 P.2d 283 (1978).

We find nothing in these cases to substantiate defendants' claim.

Defendants state:

*Lopez v. Schultz and Lindsay Construction Company,* 79 N.M. 485, 487, 444 P.2d 996 (Ct.App.1968) states: "If any workman * * * shall refuse to submit to such medical or surgical treatment as is reasonably essential to promote his recovery, the court may, in its discretion, reduce or suspend his compensation."

No such language appears in *Lopez.*

Defendants rely primarily on *Escobedo, supra. Escobedo* does not discuss the exercise of discretion by the trial court. *Escobedo* held that a trial court could reduce a workman's compensation if his refusal to undergo a myelogram was arbitrary and unreasonable. The error in *Escobedo* flows from its adoption of the following language in *Rhodes v. Cottle Construction Company,* 68 N.M. 18, 23, 357 P.2d 672 (1960):

An employee may not be denied compensation because of his failure or refusal to accept medical treatment unless it be shown that such refusal was arbitrary and unreasonable. *Consolidated Lead & Zinc Co. v. State Industrial Comm.,* 147 Okl. 83, 295 P. 210, 73 A.L.R. 1298.

*Consolidated* judicially created a rule absent any statutory provisions. *Rhodes* followed *Consolidated,* not the statutory provision, for the following reasons:

*No finding of fact was requested or made by the trial court as to whether appellant did refuse to submit to such medical treatment as was reasonably essential to promote his recovery.* Furthermore, it is conceded that the evidence on this question is conflicting. *We cannot conjecture whether the trial court did, in fact, reduce or suspend appellant's compensation because of any fact within the provisions of the above section.* [Emphasis added.] [68 N.M. 22, 357 P.2d 672.]

We hold that the trial court erred in conditionally reducing plaintiff's compensation.

C. *Plaintiff is totally permanently disabled.*

■  The trial court found:

4. As a result of the injury arising out of and in the course of Plaintiff's employment, Plaintiff is temporarily totally disabled.

\*    \*    \*    \*    \*    \*

9. If Plaintiff persists in his refusal to determine what treatment would help him, he will be 100 percent disabled for the rest of his life and will never know what, if any, treatment would help him become a productive member of society.

Under finding No. 9, plaintiff is totally permanently disabled. There is a conflict in the findings.

Defendants rely on the following testimony of Dr. Maldonado:

Q. And heavy work was the kind of work that he was doing prior to this injury?

A. Yes.

Q. Okay. And then bringing your course of treatment up through July 17, 1980, any subsequent treatment or advice given to him?

A. I think he reported to me that he was unable to find light work, and I knew he couldn't do heavy work, so said, "Well, in effect you are temporarily totally disabled". *Then in April,* said he was doing better. [Emphasis added.]

Dr. Maldonado's treatment of plaintiff ended on July 1, 1980. He had no information after that. Trial was had on February 9, 1981, some 10 months after the above statement was made. The opinion is unacceptable to support a finding of *temporary* disability for two reasons: (1) it did not fall within the question of "subsequent treatment or advice." It was a voluntary extraneous opinion given, and (2) it does not represent plaintiff's disability at the time of trial.

During trial, no testimony was presented to establish the extent of plaintiff's disabili-

ty.  Medical testimony was given by deposition.  Plaintiff testified that he had not worked since the date of the accident and Dr. Kosicki told him he could not work in the oil fields any more.  Both parties agree, however, that plaintiff was totally disabled.  In *Lane v. Levi Strauss & Co.*, 92 N.M. 504, 506, 590 P.2d 652 (Ct.App.1979) we defined temporary disability.  We said:

> Temporary disability ceases when the injured workman's physical condition becomes static or stationary.

Plaintiff suffered an accidental injury on April 23, 1979.  On June 18, 1979, plaintiff underwent a myelogram and on July 5, 1979, a spinal operation was performed.  Trial was had 17 months later.  Plaintiff's physical condition had not improved.  His physical condition became static or stationary.  Temporary disability had ceased.  Permanent disability arrived.

Plaintiff was totally, permanently disabled at the time of trial.

**D.**  *The trial court abused its discretion in awarding an interim attorney fee.*

■ The trial court found:

23.  Plaintiff should be awarded the sum of $1,500.00 as interim attorneys fees and in six months Plaintiff will be allowed to present evidence regarding the remainder of the attorneys fees and his costs as set forth in the statutes and the case law.

At the close of oral argument, the court said:

> The Court is going to order * * * that you be paid $1,500.00 toward your attorney's fee.  That has absolutely no bearing upon what you will or won't get.  But I would rather wait for your attorney's fees until we get finished in six months.  I would rather set the rest of it.

This innovation was probably predicated on the order of the trial court that plaintiff submit to a repeat myelogram within six months.  The delay may have been occasioned by the fact that the judgment entered was declared to grant plaintiff an interlocutory appeal.  This Court accepted the appeal as one from a final judgment.

The issue was properly raised in the trial court.  The trial court abused its discretion.  Plaintiff is entitled to a reasonable attorney fee.  Upon remand to the trial court, plaintiff shall present "evidentiary support" for the value of his attorney's work and, from the evidence presented, fix a reasonable attorney fee.  *Lopez v. K. B. Kennedy Engineering Co.*, 95 N.M. 507, 623 P.2d 1021 (Ct.App.1981).

**E.**  *The district court may order plaintiff to submit to vocational evaluation.*

Plaintiff claims the district court has no power to order him to submit to a vocational evaluation not requested by either party.  Plaintiff is mistaken.

Plaintiff requested the following finding and conclusion:

13.  Rehabilitation and retraining would benefit Plaintiff and are reasonably necessary to restore Plaintiff to suitable employment.

\*     \*     \*     \*     \*     \*

4.  Defendants should provide Plaintiff with all surgical, physical rehabilitation, medical osteopathic, chiropractic, and hospital services and medicine as are reasonably necessary for the treatment of Plaintiff's compensable injury.  Defendants should provide these services regardless of whether Plaintiff submits to a second myelogram.

The trial court found:

22.  Plaintiff shall be evaluated at the Roswell Rehabilitation Center in Roswell, New Mexico, if the total costs of such evaluation does not exceed $1000.00.  Defendant shall pay the costs of conducting said evaluation not to exceed $1000.00 but to include Plaintiff's reasonable travel expenses, meals and lodging during the evaluation and the Defendants are directed to submit to the Court the results of said evaluation.

■ This finding provides that the costs of "evaluation" shall not exceed $1000, and included in the $1000 are specified expenses.  This portion is erroneous.  The statute

which follows makes no limitation on "evaluation" costs. The specified expenses, called "additional compensation" shall not exceed $1000.

Vocational "evaluation" does not include rehabilitation and retraining services. Vocational "evaluation" is an examination of plaintiff and an estimate made relating to plaintiff's skill or trade to be pursued as a career. The trial court did not order rehabilitation and retraining services.

Section 52–1–50, N.M.S.A.1978, before its amendment in 1981, reads:

In addition to the medical and hospital services provided in Section 52–1–49, NMSA 1978, the employee shall be entitled to such vocational rehabilitation services, including retraining or job placement, as may be necessary to restore him to suitable employment where he is unable to return to his former job. *The court shall determine whether a disabled employee needs vocational rehabilitation services and shall cooperate with, and refer promptly all cases in need of such services to, the appropriate public or private agencies in this state* or where necessary in any other state *for such services.* An employee who, as a result of injury, is or may be expected to be totally or partially incapacitated for a remunerative occupation, and who, under the discretion of the court, is being rendered fit to engage in a remunerative occupation, may, *under regulations adopted by it,* receive such additional compensation as may, in the discretion of the court, be deemed necessary for his board, lodging, travel and other expenses and for the maintenance of his family during the period of rehabilitation; however, *such additional compensation shall not exceed one thousand dollars ($1000).* Such maintenance and other expenses shall be paid by the employer in addition to compensation allowed under other sections of the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978]. The refusal of the employee to avail himself for rehabilitation under the provisions of this act [this section] shall not result in any forfeiture

or diminution of any award made pursuant to the Workmen's Compensation Act of the state of New Mexico. [Emphasis added.]

■ Seven factors are involved when an employee claims he is entitled to rehabilitation and retraining:

(1) An employee is entitled to necessary vocational rehabilitation services if he is unable to return to his former job. Included within these services is an evaluation of the employee.

(2) The court must determine that an employee needs vocational rehabilitation.

(3) The court must cooperate with the employee in facilitating rehabilitation vocational services.

(4) The court must refer an employee promptly to an appropriate public or private agency for such services.

(5) In the discretion of the court, an employee who is being rendered fit to engage in a remunerative occupation may, and under regulations adopted by the court during the period of rehabilitation, receive additional compensation for:

(a) board, lodging, travel and other expenses and

(b) for the maintenance of his family.

(6) Such additional compensation shall not exceed $1000 to be paid by the employer, and

(7) If the employee refuses rehabilitation, it does not affect any award made for workmen's compensation.

For mandatory payment of the additional compensation, see *Ruiz v. City of Albuquerque,* 91 N.M. 526, 577 P.2d 424 (Ct.App. 1978).

*State v. Miller,* 33 N.M. 200, 207, 263 P. 510 (1927) quotes the definition of a "regulation":

"A rule of order prescribed by a superior or competent authority, relating to the action of those under its control; a governing direction; precept; law (as police regulation); any rule for the ordering of affairs, public or private."

Section 52–1–50 affords the trial court complete control and supervision over workmen who may be entitled to vocational rehabilitation. The order stated in the court's finding and judgment were made under regulations of the court and within its discretion and will not be disturbed except as to the amount of costs and additional compensation to be paid plaintiff.

Plaintiff is a Mexican born laborer, now 35 years of age, with a fifth grade education in Mexico. He can neither read nor write English. He understands and speaks few words of English. His intellectual capacity is limited. As a result, plaintiff is dissatisfied with the orders and may not undertake vocational rehabilitation. He is not compelled to comply with the court's orders. He may refuse to avail himself for rehabilitation. Section 52–1–50 concludes:

The refusal of the employee to avail himself for rehabilitation * * * shall not result in any forfeiture or diminution of any award made * * *.

We read this language to mean that the ultimate decision to undertake vocational rehabilitation as ordered rests with the employee.

We hold that the district court may order plaintiff to submit to vocational evaluation at the cost and expense of the employer and order defendants to submit to the court the results of such evaluation, provided, however, plaintiff agrees to undertake vocational evaluation by request made to the court and defendants. Plaintiff is not precluded from seeking vocational rehabilitation and training under § 52–1–50.

F. *Plaintiff is entitled to an attorney fee for services rendered in this appeal.*

The trial court ordered plaintiff's compensation reduced 50% if he did not submit to a myelogram within six months. Plaintiff refused. In effect, plaintiff's compensation was reduced 50%. By this appeal, plaintiff's full compensation was restored; plaintiff's disability was changed from "temporary" to "permanent" disability, and we hold the trial court erred in awarding an interim attorney fee.

■ In an appeal, a workman has the right to seek an increase in compensation payments or a "financial benefit" and if successful, he is entitled to payment of a reasonable attorney fee. *Romo v. Raton Coca Cola Co.*, 96 N.M. 765, 635 P.2d 320 (Ct.App.1981).

■ Plaintiff certified in his Brief-in-Chief the time spent in this appeal. It included miscellaneous items which are not relevant. We note:

| WORK | HOURS |
|------|-------|
| 1. Preparation of Petition for Interlocutory Appeal | 4 |
| 2. Notice of Appeal, Skeleton Transcript and other initiatory pleadings | 3 |
| 3. Research | 11 |
| 4. Review and Summary of Transcript | 5 |
| 5. Drafting of Briefs | 20 |
| 6. Oral Argument (estimated) | 1¾ |
| 7. Reply Brief (estimated) | 8 |
| Total | 52¾ |

The amount of attorney fee is $3,150.00

An attorney fee of $3,150.00 is awarded plaintiff for service rendered by his attorney in this appeal. With the consent of plaintiff, the attorney fee may be paid directly to his attorneys.

This case is reversed and remanded to the trial court to vacate and set aside its judgment, and enter an amended judgment in which:

(1) The second paragraph of the judgment, the "Therefore" paragraph, be amended to add "*as altered by the Court of Appeals' Opinion.*"

(2) The paragraph which orders plaintiff to submit to a repeat myelogram be deleted.

(3) The paragraph which orders evaluation shall be deleted and the following substituted therefor:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that plaintiff shall be evaluated at the Roswell

Rehabilitation Center in Roswell, New Mexico, at the cost of defendants, to include, plaintiff's reasonable travel expenses, meals and lodging during the evaluation, not to exceed $1000, and defendants are directed to submit to the court a report of the results of said evaluation, all to be done and paid unless plaintiff, in writing, refuses to undergo the evaluation. If plaintiff desires rehabilitation and retraining under Section 52–1–50, N.M.S.A.1978, plaintiff shall make that request in writing.

(4) The paragraph which awards plaintiff an interim attorney fee, be deleted, allow plaintiff to present evidentiary support for a reasonable attorney fee, fix a reasonable attorney fee and enter the amount of attorney fee in the judgment.

(5) The paragraph which allows an interlocutory appeal be deleted.

(6) Allow plaintiff to recover reasonable costs and expenses incurred.

Defendants shall pay the costs of this appeal.

IT IS SO ORDERED.

WALTERS, C. J., and DONNELLY, J., concur.