643 P.2d 298
**Amadeo J. ULIBARRI,
Plaintiff-Appellant,**

v.

**HOMESTAKE MINING COMPANY,
Defendant-Appellee.**

No. 5303.

Court of Appeals of New Mexico.

March 25, 1982.

Bruce P. Moore, Santa Fe, for plaintiff-appellant.

Wayne E. Bingham, Matthews, Crider, Jeffries, Calvert & Bingham, P. C., Albuquerque, for defendant-appellee.

## OPINION

SUTIN, Judge.

Trial was held on May 27, 1981. On July 24, 1981, the trial court entered judgment that defendant pay plaintiff partial disability benefits of 75% or $115.12 per week from and after October 8, 1980, until the further order of the court but in no event more than a total of 600 weeks. Plaintiff appeals from this judgment "insofar as it awards Plaintiff partial disability of $115.12 per week . . . ."

We affirm.

On July 4, 1981, the trial court found that plaintiff suffered an accidental injury on March 6, 1978 that was causally related; that defendant paid plaintiff $153.49 per week from March 13, 1978, to October 7, 1980; that from October 8, 1980 to the time of trial, defendant paid plaintiff $53.72 per week for 35% partial disability, and paid all medical expenses; that from October 8, 1980, to the time of trial, plaintiff has been 75% partially disabled and shall be paid compensation benefits in the amount provided by law.

Plaintiff requested the court to find that:

[A]s a result of Defendant's *wrongful reduction in compensation benefits*, the Defendant is obligated to pay to the Plaintiff compensation benefits in the amount of $201.04 per week from October 8, 1980 to December 31, 1980 and compensation benefits at the rate of $221.50 per week from January 1, 1981 until further order of this Court. [Emphasis added.]

The trial court refused to make this finding. Plaintiff does not dispute the finding that plaintiff is 75% disabled, nor that defendant "had some reason to believe that * * * [plaintiff] was not totally disabled as that term is defined by Sec. 52–1–24 N.M. S.A. 1978." Plaintiff's "contention is that Defendant on October 7, 1980 had no rational basis for deciding that * * * [plaintiff] was only 35% disabled." In other words, plaintiff contends that defendant made a "wrongful reduction in compensation benefits." As a result, the date of the

applicable rate of compensation is July, 1981, the date that disability was determined, and not March 6, 1978, the date of the accidental injury. Therefore, the trial court erred when it refused plaintiff's requested finding on "Defendant's wrongful reduction in compensation benefits," and erred in awarding plaintiff only $115.12 per week from October 8, 1980, forward.

■ *Purcella v. Navajo Freight Lines*, 95 N.M. 306, 309, 621 P.2d 523 (Ct.App.1980) adopted this rule:

> We hold the rule to be that where a workman suffers disability as a result of an accidental injury and the employer voluntarily pays compensation benefits and *then wrongfully terminates payment thereof*, causing the workman to seek relief in the courts, *the date that disability is determined in the court proceedings is the date that the applicable rate of compensation applies*, not the date of the accidental injury. [Emphasis added.]

In July, 1981, the trial court determined that plaintiff was 75% disabled but the rate of compensation, $115.12 per week, was fixed as of the date of the accidental injury. If defendant "wrongfully" terminated payment of compensation, then 1981 is the date the applicable rate of compensation applies. We agree with plaintiff that the *Purcella* rule applies when an employer "wrongfully" reduces payment of compensation. However, plaintiff claims that "wrongful" means "arbitrary." We disagree. *Buhler v. Marrujo*, 86 N.M. 399, 403, 524 P.2d 1015 (Ct.App.1974) says:

> "Wrongful" is defined as injurious, heedless, unjust, reckless, unfair.

■ The facts support defendant's reduction of disability and payments made from October 8, 1980 to the time of trial.

Plaintiff's physician, an orthopedic surgeon, testified that on April 26, 1978, an operation was performed on plaintiff's back. Postoperatively, surgery was satisfactory without any complications. Occasionally, plaintiff reported some pain in his back and leg. On February 9, 1979, it was the surgeon's impression that plaintiff showed some signs of improvement; that it would be several more months before his condition would allow any consideration of return to gainful employment. On April 10, 1979, the surgeon reported to defendant that plaintiff "has a 35-percent permanent impairment of function of his body as a whole"; that on May 7, 1979, plaintiff "is not currently taking any medication for pain, other than on an as-needed basis" and "[s]ciatica stretch test does not produce pain in the lower back at about 35 percent bilaterally"; that on October 10, 1979, plaintiff "could probably handle light clerical work or other office-type activity; that he could be suitably trained in those areas."

Defendant employs workmen with many handicaps. Anyone with a bad back could drive a forklift 8 hours a day. Defendant received reports that plaintiff was pouring concrete and wondered why it paid 100% workmen's compensation to a person able to work. In August of 1980, defendant's safety supervisor employed an investigative agency to do an activity check on plaintiff. On August 27, 28 and 29, 1980, plaintiff was put under surveillance and movies were taken, which movies were introduced in evidence and shown to the district judge.

On August 27, plaintiff was seen washing the front glass storm door of his house, bending over to the ground and lifting up to the top of the door, hand watering the front lawn and going to the mailbox. On August 28, a man appeared in a pickup truck and began watering the driveway where concrete was to be poured. Plaintiff drove to a construction site where a concrete company truck was working on the median for a new road. He returned home and met with the man who had earlier watered plaintiff's driveway. On August 29, the company's concrete truck, the one plaintiff visited the day before, backed into plaintiff's driveway. Plaintiff supervised the pouring of the concrete. Film was taken of plaintiff pushing the concrete with a squeegee-type tool. Plaintiff put on a jacket and gloves, went into the garage, and got a shovel. Film was taken of plaintiff shoveling concrete and pushing it. Plaintiff

worked from 10:30 a.m. to noon, bending and stooping, and was still working, waiting for the concrete to set up, when he became aware of the surveillance vehicle and stared at it.

The investigative person never saw plaintiff grab his back as in pain, nor manifest pain in any other way.

On October 8, 1980, defendant reduced plaintiff's compensation from 100% to 35%, based upon the surgeon's testimony. Defendant continued to pay plaintiff his reduced weekly rate of compensation from October 8, 1980, to the time of trial on May 27, 1981. It did not terminate payments. The safety supervisor of defendant testified that after back surgery, he had been evaluated at 35% of impairment of the body as a whole but he did not want the 100%. He returned to work.

Defendant would have considered plaintiff for some of its other jobs if plaintiff would get a release from a doctor. Plaintiff was written a couple of letters to get into contact with the safety director, but plaintiff never did. If plaintiff had applied, a job was available at any time a year after his accidental injury. At the time of trial, a job was available if plaintiff would apply.

An employer, like defendant, who undertakes the risk of employing disabled workmen complies with its duties in the spirit of the Workmen's Compensation Act. A workman, with knowledge that his employer hires handicapped employees, should seek work with his former employer or make reasonable efforts to obtain work within work capabilities. If total disability fades, compensation therefor must not be an inducement to malingering.

A workman who is totally disabled at the time of an accidental injury, who, in the course of months or years, remains at home to receive full compensation benefits, and who does not seek employment, should be subject to surveillance if suspicious circumstances arise or medical examinations disclose that the workman is no longer totally disabled. See, *Marez v. Kerr-McGee Nuclear Corp.*, 93 N.M. 9, 595 P.2d 1204, 597 P.2d 1178 (Ct.App.1978), Sutin, J., specially concurring.

On October 8, 1980, defendant did not reduce plaintiff's disability in a heedless, unjust, reckless or unfair manner. It was not "wrongful." The trial court did not err in refusing plaintiff's requested finding on "wrongful" reduction of disability and payments made.

Plaintiff is not entitled to attorney fees for services rendered in this appeal. Defendant shall not pay the costs of this appeal.

Affirmed.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.