697 P.2d 156

**Rudolfo A. SANCHEZ,**
**Plaintiff-Appellee and**
**Cross-Appellant,**

v.

**HOMESTAKE MINING COMPANY,**
**Defendant-Appellant and**
**Cross-Appellee.**

**No. 7591.**

Court of Appeals of New Mexico.

March 1, 1985.

Walter K. Martinez, Gary Fernandez, Grants, for defendant-appellant and cross-appellee.

Frank Bachicha, Jr., D. Diego Zamora, Bachicha Legal Services, P.A., Santa Fe, for plaintiff-appellee and cross-appellant.

## OPINION

BIVINS, Judge.

The opinion filed on February 28, 1985 is hereby withdrawn and the following substituted therefor.

Defendant appeals from an adverse judgment awarding plaintiff total permanent disability in a worker's compensation case. It raises two issues: (1) the trial court erred in finding plaintiff totally disabled when defendant had available jobs which plaintiff could perform; and (2) the trial court erred in finding plaintiff's disability attributable to his employment. Both issues turn on whether substantial evidence exists to support the trial court's findings. Holding that it does, we affirm.

Plaintiff cross-appeals claiming the trial court abused its discretion in awarding plaintiff grossly inadequate attorney fees. Because the trial court failed to make specific findings, we remand on this issue.

The substantive issues presented by defendant's appeal do not raise new issues or add to existing law; however, we take this opportunity to discuss the need for detailed findings in fixing attorney fees in worker's compensation cases, to voice concerns as to the efficacy of the present rules concerning attorney fee determinations, and to consider procedural defects in this appeal which substantially affected this court's ability to dispose of this case with dispatch.

**Background.**

(a) We first summarize the relevant findings made by the trial court. Plaintiff suffered an accidental injury to his lower back on December 4, 1980, while working for defendant as a toplander (one who works above the ground and assists miners). The trial court found the injuries consisted of a lumbosacral strain which aggravated a preexisting arthritic condition. Since the accidental injury plaintiff has not been gainfully employed. As a result of the accidental injury resulting in severe trauma to the lumbosacral spine and aggravation of the preexisting arthritic condition, plaintiff is wholly unable to perform the usual tasks of the work he was performing at the time of his injury, and wholly unable to perform any other work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience. The trial court awarded plaintiff $8,700 attorney fees.

(b) The accidental injury giving rise to this action occurred on December 4, 1980. The trial was held on May 27, 1982, but judgment was not entered until December 16, 1983, almost nineteen months following trial and more than three years from the date of injury. A decision containing the trial court's findings and conclusion was filed on February 25, 1983 and amended on March 8, 1983. The remainder of the nineteen months was devoted to resolving the attorney fee issue.

**Standard of review.**

In reviewing the findings of fact of a trial court in a worker's compensation proceeding, this court is subject to the rule that such findings shall not be disturbed if supported by substantial evidence. *Lyon v. Catron County Commissioners*, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969), *cert. denied*, 81 N.M. 140, 464 P.2d 559 (1970); *Cardenas v. United Nuclear Homestake Partners*, 97 N.M. 46, 636 P.2d 317 (Ct.

App.1981). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Tapia v. Panhandle Steel Erectors Co.*, 78 N.M. 86, 428 P.2d 625 (1967). This court is bound to view the evidence in the light most favorable to support the trial court's findings, *Mirabal v. Robert E. McKee, General Contractor, Inc.*, 77 N.M. 213, 421 P.2d 127 (1966), and to disregard all evidence unfavorable to that finding, *Duran v. New Jersey Zinc Co.*, 83 N.M. 38, 487 P.2d 1343 (1971). It is for the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies. *Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962). The appellate court may not reweigh the evidence, *id.*, nor substitute its judgment for that of the trier of fact. *Ideal Basic Industries, Inc. v. Evans*, 91 N.M. 460, 575 P.2d 1345 (1978). It is then through this small aperture called appellate review that we examine the evidence.

## DEFENDANT'S APPEAL

**1. Whether the trial court erred in finding the plaintiff totally and permanently disabled.**

The statutory definition of "total disability" provides for a two-pronged test, both of which must be proved by the plaintiff at trial: (1) complete inability to perform the usual tasks in the work he was performing at the time of the injury; and (2) absolute inability to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience. NMSA 1978, § 52–1–24. *Quintana v. Trotz Construction Co.*, 79 N.M. 109, 440 P.2d 301 (1968).

The burden of proving disability is on the plaintiff, but after plaintiff has introduced evidence as to his age, education, training, general physical and mental capacity, and previous work experience, the burden of coming forward and proving the employability of the plaintiff for a particular job rests with the defendant. *Brown v.* *Safeway Stores, Inc.*, 82 N.M. 424, 483 P.2d 305 (Ct.App.1970).

In the instant case, plaintiff testified that he was unable to perform the usual tasks of a toplander and janitor at defendant's mine due to the constant pain he was experiencing as a result of the accidental injury he sustained on December 4, 1980. Dr. Kosicki, plaintiff's medical expert, testified that, as a result of the accidental injury, plaintiff was totally disabled from doing the type of work he was required to do at the time of the injury. Defendant's safety manager admitted that the usual tasks of a toplander included strenuous duties. Dr. Valdivia, a physician and surgeon called by defendant, while testifying that plaintiff could have performed "medium duty" labor subsequent to December 4, admitted that plaintiff could not perform the usual tasks of a toplander if such a position "implies a lot of heavy bending and lifting."

Based on the foregoing testimony, plaintiff met his burden of proving the first prong of the "total disability" test. Section 52–1–24; *Quintana; Brown.*

The plaintiff also testified that he had a seventh grade education, a limited understanding of the written English language, although he had never been employed in a position that required reading or writing. He had limited training as a "cabinet maker" some forty years ago, but had never worked in that position. Plaintiff testified that his entire work history and experience involved heavy manual labor, that he never performed exclusively light duty labor at the defendant's mine, that he was not familiar with any such positions at defendant's mine for which he was qualified, and further that he was never offered light duty at defendant's mine after his accidental injury. On cross-examination, plaintiff admitted that he had performed the duties of a lampman for defendant, acknowledged that it was one of the "easier" jobs available, but nevertheless contended that it was not so easy for a person (such as himself) who "cannot bend over." Plaintiff also admitted that he "guessed" that he

could read gauges and turn valves, although he denied that he could perform other light duty jobs for defendant due to his physical limitations and pain, or that he had performed any type of household tasks since December 4, 1981. Finally, plaintiff testified that he had not done "any work at all" since that date.

Dr. Kosicki testified that plaintiff was totally and permanently disabled from doing the type of heavy physical labor for which he was fitted by previous experience and work history, and that plaintiff's condition rendered him unable to perform any tasks that required "repetitive stooping, squatting, lifting anything over ten or fifteen pounds". On cross-examination, Dr. Kosicki stated that plaintiff could not turn valves as it required twisting of the back, although he did admit that plaintiff could push or pull a knob, if hydraulically activated.

Dr. Valdivia, on the other hand, testified that plaintiff could return to work for defendant and adequately perform several light duty tasks. However, Dr. Valdivia admitted that plaintiff could experience pain even doing the least strenuous of tasks, and that he was unaware of any actual light duty positions available for plaintiff at the mine.

Mr. Souther, safety manager for defendant, testified that there were four light duty positions available at the mine for which plaintiff was qualified by education, training, and experience; however, Mr. Souther admitted that each position would require some additional training, and that nothing in plaintiff's work history indicated plaintiff had any experience in the alternative positions. Finally, Mr. Souther admitted that every such position actually required an assortment of various duties, including many that were physically strenuous, although he contended that the defendant would tailor any position to the physical limitations of an injured or handicapped employee. Mr. Souther also admitted that, to his knowledge, no employee of the mine actually contacted plaintiff with an offer of a light-duty position tailored to his physical limitations and previous experience.

Based on the foregoing testimony, plaintiff met his burden of proving the second part of the test, Section 52–1–24 with substantial evidence. Defendant, while presenting some evidence to the contrary, did not convince the trial court that plaintiff was fitted for any other work, or that such work was actually made available to plaintiff. The burden was on defendant to do so. *Brown.*

■ Mr. Souther testified as to defendant's policy of accommodating injured workers by providing jobs they could handle. We commended this policy in *Ulibarri v. Homestake Mining Co.,* 97 N.M. 734, 643 P.2d 298 (Ct.App.1982) as complying with the spirit of the Workmen's Compensation Act. We do so here. Had defendant actually attempted to provide rehabilitation through therapy and job retraining, the result reached by the trial court might have been different. A review of the file discloses no attempt by either side to pursue rehabilitation. NMSA 1978, Section 52–1–50 (Cum.Supp.1984) is mandatory in that an employee shall be entitled to such vocational rehabilitation services as may be necessary to restore him to suitable employment. *Ruiz v. City of Albuquerque,* 91 N.M. 526, 577 P.2d 424 (Ct.App.1978). The trial court may order a worker to submit to vocational evaluation at the cost and expense of the employer, but the ultimate decision to undertake vocational rehabilitation as may be ordered rests with the worker. *Aranda v. D.A. & S. Oil Well Servicing, Inc.,* 98 N.M. 217, 647 P.2d 419 (Ct. App.1982). The trial court did not order vocational evaluation or vocational rehabilitation. We do not know if plaintiff was even a candidate for such. Therefore, we are left with conflicting evidence and doubt as to whether or not plaintiff could perform any of the jobs that Mr. Souther said were available.

It was for the trial court to resolve the conflicts in the testimony and determine where the truth lies. *Montano; Perez.* This court may not reweigh the testimony

or substitute its judgment for that of the trial court, so long as it is supported by substantial evidence.

Defendant relies on *Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975) to support the argument that plaintiff was capable of performing light manual labor. Defendant overlooks the fact that the finding in *Medina* was upheld based on substantial evidence. Although the trial court reached a contrary result here, we must uphold it because substantial evidence supports that result.

Therefore, this court affirms the trial court's finding that plaintiff is totally disabled within the meaning of the Act.

**2. Whether trial court erred in finding that the plaintiff's present physical disability arose out of and in the course of his employment with the defendant.**

Defendant contends that because plaintiff was suffering from a degenerative lower back condition at the time of the accidental injury, and without which he would not have the present disability, that disability did not arise out of his employment. A worker is entitled to compensation where an injury was incurred by the worker and disability resulted therefrom, although the worker was suffering from a preexisting disease, absent which there would have been no disability. *Reynolds v. Ruidoso Racing Association*, 69 N.M. 248, 365 P.2d 671 (1961); *Webb v. New Mexico Publishing Co.*, 47 N.M. 279, 141 P.2d 333 (1943); *accord. Herndon v. Albuquerque Public Schools*, 92 N.M. 635, 593 P.2d 470 (Ct.App.1978). Where there is a direct relationship or causal connection between the accidental injury and the resulting disability, the worker is entitled to compensation to the full extent of the disability even though attributable in part to a preexisting condition. *Reynolds; Moorhead v. Gray Ranch Co.*, 90 N.M. 220, 561 P.2d 493 (Ct.App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977).

In the instant case, plaintiff adequately met his burden of proving that his disability resulted from an accidental injury arising out of, and in the course of his employment with defendant. Plaintiff testified that he felt a sharp pain in his back when he attempted to lift a heavy metal door in order to load supplies in a "cage," a task that was within the scope of his duties as toplander, and one which he had performed on numerous occasions without incident prior to December 4, 1980. Defendant did not challenge any of these contentions. Dr. Kosicki testified that, to a reasonable medical probability, plaintiff strained his back as a result of the injury sustained by him on December 4, 1980, thereby increasing his physical disability. It is inconsequential that plaintiff suffered from a preexisting osteoarthritic spinal condition that contributed to plaintiff's total disability, *Reynolds; Moorhead*, so long as plaintiff had been satisfactorily performing his duties as a toplander before the accidental injury. *Reynolds; Ortega v. New Mexico State Highway Department*, 77 N.M. 185, 420 P.2d 771 (1966). Defendant relies on *Tafoya v. Kermac Nuclear Fuels, Corp.*, 71 N.M. 157, 376 P.2d 576 (1962). While an opposite result was reached by the trial court in that case, it was upheld because substantial evidence supported the result. The same holds true here.

Accordingly, the trial court's findings of fact are supported by substantial evidence and will not be disturbed on appeal. "Rarely should an appeal be taken by a workman or employer based upon a lack of substantial evidence to support the findings." *Perez v. International Minerals & Chemical Corp.*, 95 N.M. 628, 633, 624 P.2d 1025 (Ct.App.1981).

**PLAINTIFF'S CROSS–APPEAL**

Plaintiff challenges the attorney fee award, claiming the trial court abused its discretion by misapplying the "Fryar factors" and awarding inadequate fees to plaintiff.

*Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979) sets forth the factors the trial court should consider in fixing reasonable attorney fees in a worker's compensation case. Plaintiff claims the trial court "bla-

tantly misapplied" the *Fryar* test, referring us to the findings and conclusions entered and the order awarding plaintiff $8,700 as a fair fee. While the trial court did not set out each *Fryar* factor, its conclusion number 2 reflects consideration of those factors, and its reference to plaintiff's affidavits, which included all of the factors, indicates they were considered.

██ *Aguilar v. Penasco Independent School District No. 6*, 100 N.M. 625, 674 P.2d 515 (1984) provides that the trial court not only set out the factors, but indicate how each was considered. Compare *Jennings v. Gabaldon*, 97 N.M. 416, 640 P.2d 522 (Ct.App.1982), which suggests the trial court must make a finding as to each *Fryar* factor with *Morgan v. Public Service Co. of New Mexico*, 98 N.M. 775, 652 P.2d 1226 (Ct.App.1982) which holds that the trial court not be required to make a finding on a factor for which there is no evidentiary support. The holdings are in conflict and can only lead to confusion. *Fryar v. Johnsen* can certainly be read to require specific findings as to each factor, or even the factors as to which there is evidentiary support. In no other instance of which we are aware does the trial court have to make a specific finding as to an evidentiary factor and explain how it was considered and correlate that fact with others. Trial courts are required only to make only such ultimate findings of fact as necessary to support its decision. *State ex rel. State Highway Commission v. Pelletier*, 76 N.M. 555, 417 P.2d 46 (1966). Ultimate findings of fact on attorney fees should be sufficient once it is shown that evidence exists to establish the essential *Fryar* factors and that the trial court did in fact consider them.

Why should a district court judge, learned in the law and experienced in trial matters, have to explain each factor in his or her mental decision-making process as to a simple matter like attorney fees, when we do not require the same of lay jurors who wrestle with complex issues that affect life and property? If we can trust jurors with a general verdict, surely we ought to trust trial judges to be able to reach an informed decision as to attorney fees without requiring them to write an "essay." We do not make that requirement in other cases involving attorney fees, such as domestic relations cases. The record here reflects that the trial court did consider the "Fryar factors" as carefully set out in the affidavits in arriving at its award. *Jennings; Fitch v. Sam Tanksley Trucking Co.*, 95 N.M. 477, 623 P.2d 991 (Ct.App.1980).

Even so, language in *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 695 P.2d 483 (1985) can be read to require "findings" as to the factors for which there is evidentiary support. After discussing the conflict between *Jennings* and *Morgan*, the high court in *Woodson* said: "The trial court need make findings only on those factors on which the parties have presented evidence." *Woodson* overruled *Jennings* to the extent it holds otherwise. We read *Woodson* to require the trial court to make specific findings of fact, and until the supreme court holds otherwise, such must be done. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973).

Accordingly, the award of attorney fees must be remanded in order that the trial court make specific findings as to each *Fryar* and statutory factor as to which there is evidentiary support. Without suggesting that the award as made represents an abuse of discretion, on remand the trial court should consider the *Woodson* opinion in making its award.

The flood of appeals involving attorney fees in worker's compensation cases and questions raised prompted Judge Wood to comment in *Morgan* that "the question of the fee award has become the dominant aspect of the compensation proceedings." 98 N.M. at 779. Chief Judge Donnelly noted in *Jennings* that disputes over fees has resulted in a spate of appellate decisions delineating guidelines that must be considered in fixing the fees. Judge Lopez said in *Maschio v. Kaiser Steel Corp.*, 100 N.M. 455, 672 P.2d 284 (Ct.App.1983) "The matter of attorney's fees has been before

this court many times. In this court's experience, attorneys, ironically, sometimes spend as much time, if not more, in proving their fee claims as they spend in proving disability for their clients." 100 N.M. at 459.

While there is no indication in the present case that counsel for plaintiff placed his interest ahead of the client, and the record clearly reflects the contrary, nevertheless, the present state of the law could place the plaintiff's lawyers in that awkward position. We also observe that the guidelines for attorney fees are all directed to and encourage litigation. There are no factors which give consideration to efforts made to seek rehabilitation for the worker or to overcome resistance to those efforts when made. Nor is consideration given to efforts made to expedite the process; the reward seemingly going to those who can prolong it the most. While there is no indication of intentional delay here, what incentive is there for defense counsel to shorten the process, when it would be in his financial interest to prolong it? The legislature requires that worker's compensation cases be handled as promptly as possible and that the trial be conducted in a summary manner as far as possible. NMSA 1978, § 52–1–35(A) (Cum.Supp. 1984).

The cases spawned by *Fryar v. Johnsen,* most of which are interpretations by this court, suggest the need for reconsideration. Not only has the attorney fee issue become dominant, resulting in unnecessary delays, (see subparagraph (b) under Background), it often evolves into a mini-trial. *See Morgan.* While *Alexander v. Delgado* requires this court to follow the supreme court, we do not view that case as precluding constructive suggestions, particularly when a rule is not working well. And, as pointed out, most of the confusion has emanated from interpretations of *Fryar v. Johnsen* by this court. Therefore, in light of the opinions since *Fryar v. Johnsen,* the legislative intent to provide for a prompt resolution of workmen's compensation cases as well as efforts to pursue rehabilitation of the employee by both parties

where possible, we urge a reconsideration by the supreme court of the *Fryar* factors and their present efficacy.

**Procedural matters.**

(a) NMSA 1978, Crim., Child.Ct., Dom. Rel. & W/C App. Rule 205(a)(3) (Repl. Pamp.1983) requires the appellant to set forth in the docketing statement a concise, accurate statement of the case containing *all* facts material to a consideration of the issues presented. Defendant failed to comply with Rule 205(a)(3). Had this court been apprised of all material facts, this case most likely would have been assigned to a summary calendar with summary affirmance proposed, thus expediting the appeal process. *See State v. Fulton,* 99 N.M. 348, 657 P.2d 1197 (Ct.App.1983).

(b) Similarly, defendant in its brief-in-chief failed to provide a resume of *all* facts relevant to the issues presented for review. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App. Rule 501(a)(3) (Repl.Pamp.1983). *Cf.* NMSA 1978, Civ.App.R. 9(d) (Repl. Pamp.1984).

 (c) Crim. Rule 205(a)(5) requires appellant to include a list of authorities believed to support the contentions and "any contrary authorities known by appellant." Crim. Rule 501(a)(4) requires citation of New Mexico authority, if any. Defendant's second issue is controlled by *Reynolds v. Ruidoso Racing Association, Inc.* and its progeny, yet defendant failed to cite those line of cases in either its docketing statement or brief. While there is no indication defense counsel knew of these cases, although a minimum of research would have revealed their existence, counsel should be aware of his professional responsibility to disclose controlling legal authority even if contrary to his position. *See* NMSA 1978, Code of Prof.Resp.R. 7–106(B)(1) (Repl.Pamp.1982).

(d) Plaintiff failed to file a docketing statement on his cross-appeal as required by W/C App. Rule 205 made applicable to cross-appeals by NMSA 1978, Crim., Child. Ct., Dom.Rel. & W/C App. Rule 103 (Repl. Pamp.1983). This failure to comply with

the rules was called to plaintiff's attention in the defendant's answer brief to the cross-appeal, yet plaintiff did not respond by taking action to correct the defect.

(e) The calendaring process is based on the docketing statement and the record proper. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App. Rule 207 (Repl. Pamp.1983). Without a docketing statement, which plaintiff here failed to provide, or an accurate or complete statement of the material facts, which defendant failed to provide, this court's ability to assign cases to the proper calendar is hampered. This results in delay.

This case has taken too long to resolve. We set forth the time frame at the beginning of this opinion. We do not commend this delay. While a separate hearing on attorney fees is permissible, it is not required. *Morgan.* A period of almost eight months lapsed between entry of the decision and the award of attorney fees. More than a month lapsed after attorney fees were fixed before entry of the final judgment. The case has been pending in this court since December 30, 1983, more than a year. While counsel cannot be faulted for the delay in district court, failure to comply with the expedited appeal process has contributed to the delay in this court. We find this delay unacceptable and contrary to the express provisions of the Workmen's Compensation Act. *See* § 52–1–35(A).

## CONCLUSION

We affirm that part of the judgment awarding plaintiff total permanent disability. We set aside the award of attorney fees and remand for further proceedings on that issue consistent with this opinion. Defendant shall pay the cost of appeal and $2,500 plus applicable tax for plaintiff's attorney fees on appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.