737 P.2d 100

**Arthur MARTINEZ, next friend and natural father and on behalf of Lydia V. MARTINEZ, Plaintiffs-Appellants,**

**v.**

**Judith VIGIL and Andy Vigil, Defendants-Appellees.**

**No. 8881.**

Court of Appeals of New Mexico.

April 16, 1987.

Robert Crollett, Crollett & Sanchez, P.A., Taos, for plaintiffs-appellants.

Louise Gibson, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellees.

## OPINION

BIVINS, Judge.

This appeal presents the question of whether fault may be apportioned among individuals who, although not in control of the instrumentality that caused the harm, nevertheless contributed to bringing about the harm. We hold it may, under the circumstances of this case, and affirm the trial court. We also affirm on the issue of damages.

Plaintiff Lydia Martinez (Lydia), a minor, brought this action by her father and next friend to recover damages for personal injuries suffered when a pickup truck, owned by defendant Andy Vigil and driven by his daughter, defendant Judith Vigil (Judith), either struck Lydia or another girl causing the latter to fall on Lydia, injuring Lydia's knee. Following a bench trial, the trial court found that Lydia suffered total damages in the sum of $40,000, but that she was entitled to no recovery for future pain and suffering. The trial court found Judith negligent in the operation of the vehicle and apportioned ⅙ of the damages against her and her father, the latter's liability being based on the "family purpose" doctrine. The trial court apportioned the remaining ⅚ fault equally among Lydia and four other girls, all of whom were fighting around the truck as it was leaving or attempting to leave a picnic. The four girls were not sued. Plaintiffs appeal, claiming substantial evidence will not support (1) the findings apportioning fault; or (2) the finding that Lydia will not suffer future pain or suffering as a result of the accident. We affirm.

### 1. Apportionment

Plaintiffs contend that Judith's negligence in the operation of the vehicle was the sole proximate cause of the accident and resulting injuries. While conceding substantial evidence supports the findings that fights erupted around Judith's truck as she was leaving, plaintiffs argue these

findings will not support the conclusion reached. First, plaintiffs claim that since no threats were made to Judith and she did not observe the fights, the fights could have had no effect on her state of mind. Second, according to plaintiffs, when each fight is isolated, it is easy to see that none caused the accident.

Summarizing the trial court's findings and the evidence supporting them, an unsanctioned high school "senior picnic" was held in Pilar, New Mexico, on May 18, 1983. Judith, aged 18, accompanied by Annabelle Romero, who was pregnant, went to the picnic at the request of Judith's mother to pick up Judith's sister, Anna Mae Vigil. Also attending the picnic were Lydia, aged 15, and a number of her friends, including Lisa Fernandez, sister of Tony Fernandez to whom Judith had been married and had a child. The trial court described two factions at the picnic, with Judith, Annabelle, Judith's sister and one other girl belonging to one faction, and Lydia, Lisa Fernandez and three other girls belonging to the other faction. There was a history of problems between members of the two factions before the picnic. There was widespread use of alcohol at the picnic. Words were exchanged between the two factions, as well as name calling. Lydia's group called Judith and her friend "the Ewings" (as in the television series "Dallas"). Judith and Annabelle decided to leave before a fight erupted. Judith's sister refused to go with them.

As Judith and Annabelle were about to leave, more words were exchanged between the members of the factions and "the situation became sensitive." Rocks and bottles were thrown at the truck. Lisa Fernandez reached inside the truck and grabbed Judith's hair. Annabelle grabbed the steering wheel and put the gearshift in park. Judith kicked out through her open window at Lisa. Lisa withdrew. A fight erupted between Judith's sister, Anna Mae, and Yvonne Medina. Another fight erupted between Anna Herrera and Lydia. These fights occurred around the truck and the "situation was confusing." Other members of the two factions were around the truck. "There was much confusion" and it "was a dangerous situation" when Judith was trying to leave because of all the fighting and all the people.

Judith waited for a car in front of her to move and then left. Lydia, who had been fighting in front and to the left of the truck, fell from a rock and was injured when the truck hit her knee or when Anna fell on her after the truck brushed Anna. Judith was not aware she had hit either girl. She was upset when she left and pulled over and stopped the truck. Someone came along and told Judith what had happened. A friend drove her home.

We disagree with plaintiffs' claim that no threats were made to Judith. Certainly the rocks and bottles thrown at the truck, coupled with Lisa's reaching in and grabbing Judith by the hair, presented threats. Nor are we persuaded by plaintiffs' argument that since Judith could not say who else was fighting, these fights did not contribute to her state of mind. Plaintiffs' view of the facts is too simplistic. Judith was upset. Objects had been thrown at her truck. Lisa reached in and grabbed her while the truck was starting to move. Judith wanted to leave. Her companion was pregnant. People were surrounding the truck. The mere fact that Judith could not recall the particulars of this overall tense situation, i.e., the two other fights, does not mean those fights did not add to the confusion or serve to increase the tension.

Moreover, plaintiffs' view of the facts is not quite accurate. While Judith did say at trial she could not recall who was fighting, plaintiffs' counsel, at one point, confronted her with a statement she gave to the police shortly after the incident in which she did identify Lydia fighting.

In *Sanchez v. Homestake Mining Co.*, 102 N.M. 473, 697 P.2d 156 (Ct.App.1985), we recited the standard of appellate review as follows:

> In reviewing the findings of fact of a trial court * * * this court is subject to the rule that such findings shall not be disturbed if supported by substantial evidence. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. This court is bound to view the evidence in the light most favorable to

support the trial court's findings, and to disregard all evidence unfavorable to that finding. It is for the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies. The appellate court may not reweigh the evidence nor substitute its judgment for that of the trier of fact.

*Id.*, 102 N.M. at 475–476, 697 P.2d 158–159 (citations omitted).

■ Applying that standard, we are satisfied substantial evidence supports the trial court's findings that the actions of the other five girls, including Lydia, in fighting around the truck as it attempted to leave, contributed to the tension and confusion that caused Judith to hit Lydia or Anna. Also, Lydia, by fighting in close proximity to the truck as it was attempting to leave, failed to use due care for her own safety.

While recognizing the rule that two or more concurrent and directly cooperative proximate causes may contribute to an injury, plaintiffs argue that the conduct of each actor must be isolated and a determination made as to "whether the conduct of each actor, in itself, would have caused Lydia Martinez' injuries." Plaintiffs then take each of the fights engaged in by the five girls and conclude that none caused Judith to fail to keep a proper lookout.

■ We believe plaintiffs view the law and the facts too narrowly. In *Lopez v. Maez*, 98 N.M. 625, 632, 651 P.2d 1269, 1276 (1982), the supreme court said: "A person who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the act of a third person contributes to the final result." The court went on to hold that a person may be subject to liability if he or she breaches a duty by selling or serving alcohol to an intoxicated person, the breach of which is found to be a proximate cause of injuries to a third party. If a tavernkeeper can be held liable for the foreseeable consequences of selling or serving alcohol to an intoxicated person, who later injures a third party, we see no reason why fault may not be apportioned to persons who engage in conduct that creates a dangerous situation under the facts of this case. In the case of a tavernkeeper, it is foreseeable that intoxicated drivers cause accidents that injure people. In the case of combatants who terrorize a driver, it is likewise foreseeable that such conduct can cause fear, which in turn may cause the driver to be less careful. While each act affects the judgment of the driver in a different way, the result may be the same.

We affirm the apportionment made by the trial court.

## 2. Future Pain and Suffering

The trial court found that "Lydia Martinez will not suffer any future pain and suffering as a result of the accident in May of 1983, attributable to the accident, but any future pain and suffering incurred by Lydia Martinez is attributable to her own actions." Based on that finding, the trial court concluded that Lydia was not entitled to recover damages for future pain and suffering.

Plaintiffs argue that substantial evidence does not support the finding made. The only medical evidence offered in the trial came through the deposition of Dr. James Buchanan, an orthopedic surgeon. This deposition is replete with discussion to the effect of Lydia's failure to follow instructions, perform exercises and the effect of a subsequent fight between Lydia and her sister that resulted in Lydia being hit on her legs with a chair. This evidence can be summarized by quoting the trial court's findings that immediately precede the challenged finding:

38. Lydia Martinez went to see Dr. Hassemer after her injury and he prescribed exercises, but Lydia Martinez failed to follow the exercises prescribed by him.

39. Lydia Martinez went to see Dr. Buchanan who prescribed exercises both before and after the surgery.

40. Lydia Martinez failed to do a number of exercises prescribed by Dr. Buchanan.

41. Lydia Martinez failed to do the type of exercises prescribed by Dr. Buchanan through June of 1984.

42. Lydia Martinez did not follow doctor's orders with respect to the care for her knee.

43. Lydia Martinez stopped using crutches before the doctor told her to.

44. Lydia Martinez removed a leg brace against doctor's instructions.

45. Lydia Martinez did exercises incorrectly and contrary to the way in which Dr. Buchanan prescribed them.

46. This failure to do exercises, failure to use the crutches and removal of the brace contributed to any future knee pain which Lydia Martinez may incur.

47. Lydia Martinez compromised Dr. Buchanan's surgery by failing to use the crutches and removing her brace and failing to do her exercises properly.

48. The ligaments stretched after the surgery because [of] Lydia Martinez's failure to follow doctor's instructions with respect to her leg.

49. Lydia Martinez was involved in an altercation with her sister in August of 1984 which involved the left knee as well as the right knee and which contributed to problems with the left knee.

While the challenged finding is couched in language as to no future pain or suffering as a result of the accident, when examined in context of the above findings that precede it, and the amount of the total damages, we believe a reasonable interpretation is that the trial court was reducing the damages for failure to mitigate or engaging in practices which exacerbated the injury. The trial court found Lydia suffered total damages in the amount of $40,-000 as a result of the accident, but did not itemize all the elements included.

The uniform jury instruction on mitigation, SCRA 1986, UJI 13–1811, provides: "In fixing the amount of money which will reasonably and fairly compensate plaintiff, you are to consider that an injured person must exercise ordinary care to minimize or lessen his damages. Damages caused by his failure to exercise such care cannot be recovered."

Under the doctrine of avoidable consequences, a person injured by the tort of another is not entitled to recover for losses that he or she could have avoided by the use of due care. *Rutledge v. Johnson,* 81 N.M. 217, 465 P.2d 274 (1970) (plaintiff injured in a rear-end car accident and thereafter further injured in three household accidents). Further, an award may not include any sums for physical or mental pain and suffering caused by failure to reasonably care for the injuries sustained, and this includes negligence in failure to follow the doctor's advice or otherwise care for the injuries. *Moulton v. Alamo Ambulance Serv., Inc.,* 414 S.W.2d 444 (Tex. 1967). A reasonable interpretation of the finding in question satisfies us that the trial court was only disallowing an award for pain and suffering attributable to avoidable consequences or Lydia's failure to mitigate her injuries, not an award for the accident itself. This interpretation is reinforced by another finding that Lydia has scars on her left knee as a result of surgery following the injury. Plaintiffs argue these scars now cause and will continue to cause Lydia embarrassment. By its findings, the trial court apparently agreed. We also affirm on this point.

Without attempting to prescribe a fixed rule, the better practice in cases where there is evidence to justify a reduction in damages would be for the trial court to decide the damage issue without including any award for damages proximately caused by an injured party's failure to care for and treat his or her injury. *See* UJI 13–1811; *Moulton v. Alamo Ambulance Serv., Inc.* We believe that was done here, except for the unnecessary finding as to future pain and suffering. It should be sufficient to find, as an ultimate fact, that Lydia failed to exercise ordinary care to minimize or lessen her damages and that no damages caused by that failure are being allowed.

The judgment is affirmed.

IT IS SO ORDERED.

GARCIA and FRUMAN, JJ., concur.