621 P.2d 523

**Lawrence PURCELLA, Plaintiff-Appellee,**

v.

**NAVAJO FREIGHT LINES, INC.,
Employer, Self-Insured,
Defendant-Appellant.**

**No. 4770.**

Court of Appeals of New Mexico.

Dec. 16, 1980.

James M. Kennedy, Coors, Singer & Stratton, Albuquerque, for defendant-appellant.

Michael L. Danoff, Michael Danoff & Associates, P. C., Albuquerque, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

This is an appeal by defendant from a judgment in a workmen's compensation case in which the parties stipulated as to all issues except the applicable compensation rate to be paid plaintiff and the number of weeks remaining for which payment shall be made. We affirm.

Two stipulations were filed November 16, 1979. The pertinent facts stipulated in an Addendum are:

1. Plaintiff sustained a work-related injury to his leg . . . [on] September 27, 1977.

2. [T]he Plaintiff was unable to work for the period beginning September 28, 1977, theough [sic] March 19, 1978. The Plaintiff returned to work on March 20, 1978. During this period of time, approximately 24⁵/₇ weeks, the Plaintiff was paid compensation in the amount of $142.59 weekly.

3. The current average weekly wage in the State of New Mexico is $186.38.

4. The parties have agreed that Plaintiff ... has sustained a permanent partial disability of thirty-five percent (35%).

5. Due to the injury sustained on September 27, 1977, Plaintiff has received Workmen's Compensation for the period beginning September 28, 1977, to October 29, 1979.

6. Plaintiff filed suit against the Defendant on September 15, 1978, on the basis that he sustained various leg injuries while working in and on behalf of the Defendant.

7. The issue of the applicable compensation rate to be paid to the Plaintiff, based on the stipulation of thirty-five percent (35%) disability, as it applies to the present compensation rates in the State of New Mexico shall be left to this Court for its determination.

The parties also stipulated to the following pertinent facts:

1. Defendant agrees to pay the Plaintiff $3,500.00 which represents compensation for the period from March 20, 1978 to October 29, 1979....

2. ... Defendant agrees to remain liable for future medical bills relating to the injury of September 27, 1977.

·3. ... The amount of $3,500.00 represents the permanent partial disability payment to Mr. Purcella for the period of March 20, 1978 to October 29, 1979.

We gather from these stipulations entered into 12 months after plaintiff's complaint was filed that:

1. From September 27, 1977 thru March 19, 1978, about 24⁵/₇ weeks, defendant paid plaintiff workmen's compensation for total disability in the amount of $142.59 weekly, the average weekly wage.

2. From March 20, 1978 thru October 29, 1979, defendant paid plaintiff $3,500.00 which represented a permanent 35% partial disability payment at the same rate.

3. The only question left for the trial court to decide was: Beginning October 30, 1979, at what compensation rate should defendant pay plaintiff based upon the stipulation of 35% disability?

In its judgment, the trial court made a finding:

\* \* \* \* \* \*

6. That the average weekly wage in effect in New Mexico *on the date of the stipulation* of the percentage of disability on October 29, 1979, was $186.38. [Emphasis added.]

\* \* \* \* \* \*

Defendant claims that, in accordance with the stipulations entered into, it should pay plaintiff $49.61 per week for 491²/₇ weeks based upon the average weekly wage of $142.59 in effect on September 27, 1977, the date of the injury.

The trial court gave judgment that defendant pay plaintiff $65.23 per week for a period of 575³/₇ weeks commencing October 30, 1979, based upon the current average weekly wage of $186.38.

*First*, defendant contends that the rate of compensation is measured at the time plaintiff's wage-earning capacity was affected.

Defendant quotes the following from *Casias v. Zia Co.*, 93 N.M. 78, 80, 596 P.2d 521 (Ct.App.1979):

The rate of compensation, being intended to bear some relationship to the workman's wage earning capacity [citation omitted], is measured as of the time that wage-earning capacity is affected, i. e., the date of disability.

Unfortunately, this was the rule prior to 1965 and inadvertently carried forward after the applicable section of the Workmen's Compensation Act had been amended.

In 1959, "Disability" meant "a decrease of wage earning ability...." Section 59–10–12.1(A), N.M.S.A.1953. In 1965, this section was amended. Total and partial disability was defined in its present form under §§ 52–1–24 and 52–1–25, N.M.S.A.1978. The amendment changed the primary test of disability from wage earning ability to capacity to perform work as delineated in the statute. *Medina v. Zia Company*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975);

*Quintana v. Trotz Construction Company,* 79 N.M. 109, 440 P.2d 301 (1968); *Maes v. John C. Cornell, Inc.,* 86 N.M. 393, 524 P.2d 1009 (Ct.App.1974); *Trujillo v. Tanuz,* 85 N.M. 35, 508 P.2d 1332 (Ct.App.1973); *Adams v. Loffland Brothers Drilling Company,* 82 N.M. 72, 475 P.2d 466 (Ct.App.1970).

*Lamont v. New Mexico Military Institute,* 92 N.M. 804, 595 P.2d 774 (Ct.App.1979) carried this erroneous rule forward based upon a *1962* opinion.

█ The established rule is that the rate of compensation in effect on the date of disability applies, not the date of the accident. *Moorhead v. Gray Ranch Co.,* 90 N.M. 220, 561 P.2d 493 (Ct.App.1977); *De La Torre v. Kennecott Copper Corporation,* 89 N.M. 683, 556 P.2d 839 (Ct.App.1976).

The accidental injury occurred on September 27, 1977. Plaintiff was disabled from September 28, 1977 until March 20, 1978. Defendant stopped payments. If payments had continued, the rate of compensation to be paid would be the average weekly wage of $142.59 in effect on September 28, 1977. On September 15, 1978, plaintiff filed his claim for workmen's compensation benefits because defendant failed and refused to pay.

The issue before the trial court was whether plaintiff's disability continued after March 19, 1978, the day that payments were stopped. On November 16, 1979, fourteen months after suit was filed, defendant, by stipulation, agreed that plaintiff was 35% permanently and partially disabled from March 20, 1978 to October 29, 1979, and paid plaintiff for that period at the rate of $142.59. Defendant now claims that disability did continue from September 28, 1977 to October 30, 1979. After withholding payments of $3,500.00 for two years and nine months, defendant now wants plaintiff to "hold the bag," to carry the responsibility for the wrong committed by defendant.

Defendant placed plaintiff in this syllogistic posture: (1) Plaintiff was disabled from September 27, 1977 to March 20, 1978. He was no longer disabled. (2) On November 16, 1979, defendant admitted that plaintiff was disabled and it was at fault in terminating payments. (3) Therefore, plaintiff's rate of compensation should be determined as of September 28, 1977, for the benefit of defendant.

The flaw in defendant's reasoning flows from its desire to profit by its own wrong. "To do one right" is the essence of the Workmen's Compensation Act.

On November 16, 1979, the date of the stipulation, defendant conceded the existence of plaintiff's disability. To be fair to plaintiff, this date became the one at which disability came into existence. The average weekly wage was $186.38. Plaintiff was entitled to this benefit.

█ We hold the rule to be that where a workman suffers disability as a result of an accidental injury and the employer voluntarily pays compensation benefits and then wrongfully terminates payment thereof, causing the workman to seek relief in the courts, the date that disability is determined in the court proceedings is the date that the applicable rate of compensation applies, not the date of the accidental injury. An employer cannot "eat his cake and have it too." An employer cannot have it both ways. We have said innumerable times that an employer and a workman must comply with the spirit of the Workmen's Compensation Act, i. e., a common sense concept of fairness in the view of a subjective eye that reviews the facts.

█ *Second,* defendant claims that the Workmen's Compensation Act requires the applicable rate of compensation to remain in effect for the entire period during which compensation is paid. We agree. Defendant states:

The weekly compensation benefit on September 27, 1977, was $142.59. Purcella has continually received, *since the date of the parties' stipulations* [November 16, 1979], compensation benefits of thirty-five percent (35%) of $142.59. [Emphasis added.]

Defendant deftly omitted the non-payment of compensation from March 20, 1978 to November 16, 1979. We cannot translate

310

this failure to pay for 83 weeks as an "entire period during which compensation is paid." We again caution employers not to use devious routes in search for relief. In a half century, during the existence of the Workmen's Compensation Act, it has become almost sacrosanct that the duty of an appellate court is to search for the protection of a workman and not for relief sought by an employer who is at fault.

■ What we have said with reference to the applicable rate of compensation to be paid applies to a determination of the number of weeks for which a workman should be paid compensation. We cannot include the 83 weeks during which period plaintiff was not currently paid compensation for disability, and during which period the employer caused plaintiff to suffer the loss of use of $3,500.00 to which he was entitled. The employer had the benefit of the use of this money, to the detriment of plaintiff. It was not entitled to benefit of "weeks" as well as the benefit of the money.

Plaintiff is entitled to an award of $2,500.00 for the services of its attorney in this appeal. Costs shall be paid by defendant.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

WALTERS, J., concurs in part and dissents in part.

WALTERS, Judge (concurring in part, dissenting in part).

I agree that the rate of compensation awarded by the trial court should be measured at the rate in effect on October 29, 1979, when the parties stipulated to claimant's 35% disability. The $3,500 belatedly paid for the period from March 20, 1978 to October 29, 1979 was not a negotiated settlement amount, but was stipulated to "represent compensation" due for that period. As payment for 84 weeks during which compensation was withheld, it is patently clear that the amount represented about 29%, not 35%, of the average weekly wage at which compensation was initially commenced. The 35% disability agreed upon could not have referred to a disability in that degree existing earlier than October 29, 1979.

The appellants misread *Casias* and *LaMont, supra.* Wage earning capacity relates to the reason for compensation benefits, not to the test to be applied in determining disability. *See Chavira v. Gaylord Broadcasting Co.,* 95 N.M. 267, 620 P.2d 1292 (App.1980). The amount of compensation due is to be measured as of the date of disability.

I agree with appellant's argument that 35% disability benefits were erroneously awarded for 575³/₇ weeks. The $3,500 to be paid was compensation for 84 weeks; the initial period of total compensation paid was for 24⁵/₇ weeks. Since §§ 52–1–41 and –42, N.M.S.A.1978, limit benefits to a total of 600 weeks, the judgment should be amended to provide that payment be made to plaintiff at the rate of $65.23 per week for 491²/₇ weeks.