703 P.2d 925

**Francis SANCHEZ, Plaintiff-Appellee,**

v.

**MOLYCORP, INC., a Self-Insured Employer, Defendant-Appellant.**

**No. 8012.**

Court of Appeals of New Mexico.

June 27, 1985.

Steven G. Schmidt, Prince, Schmidt & O'Friel, Winston Roberts-Hohl, Santa Fe, for plaintiff-appellee.

Lourdes A. Martinez, Campbell & Black, P.A., Santa Fe, Kemp W. Gorthey, Austin, Tex., for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

Defendant, Molycorp, Inc., (Employer), appeals from a judgment awarding plaintiff workmen's compensation benefits for total disability under the Workmen's Compensation Act. Two issues are presented on appeal: (1) claim of lack of substantial medical evidence of causal connection between the accident and plaintiff's disability; and (2) propriety of award of prejudgment interest in a workman's compensation action. We affirm in part and reverse in part.

### FACTS

Plaintiff was employed as a miner at Employer's molybdenum mine near Taos. On May 29, 1982, during his work shift, plaintiff slipped and fell, striking his head against a rail. Plaintiff began to experience headaches, dizziness, difficulty in functioning, and depression. During the period between the accident and the trial on February 13, 1984, plaintiff was examined by a number of physicians and psychologists, including Dr. Michael Baten, a neurologist, Drs. Robert Hillman and James Knoll, psychiatrists, and Drs. Elliott Rapoport and Joyzelle McCreary, clinical psychologists. The deposition testimony of Drs. Hillman, Knoll, Rapoport, and McCreary was presented at trial.

Following trial, the trial court adopted findings of fact and determined that plaintiff was totally disabled. The court also found that:

4. [Plaintiff as a result of his fall struck] his head against a rail and, as a natural and direct result thereof * * * suffered brain damage with a post-concussion syndrome (organic personality syndrome) accompanied by chronic and severe * * * headaches, dizziness and general difficulty in functioning, producing severe psychological reactions, including depression.

The court also found that Employer voluntarily paid plaintiff weekly installment benefits of $246.44 from August 29, 1982, through April 30, 1983, for a total of 35 weeks. Beginning May 1, 1983, Employer reduced the weekly maximum compensation installments payable to plaintiff to $24.64. The trial court further found that the reduction in the payment of compensation benefits to plaintiff was made:

solely upon the basis of a medical evaluation of impairment, according to the American Medical Association classification, to * * * [plaintiff's] ⸢labyrinthine/vestibular function, determined at 10 percent, as distinguished from an administrative evaluation of Sanchez' disability with respect to work, in a case that clearly was outside the scope of the scheduled injury section (NMSA 1978, sec. 52–1–43).

The court's findings of fact additionally provided:

17. In reducing Sanchez' weekly compensation to 10 percent of the maximum, based upon a patently erroneous application of New Mexico law, Molycorp acted solely to further its best interests * * * its conduct evinced an ostrichlike attitude of self-delusion * * *.

18. In reducing Sanchez' weekly compensation to 10 percent of the maximum beginning May 1, 1983, Molycorp acted heedlessly, unjustly and unfairly.

Predicated upon its findings, the court awarded plaintiff total permanent disability, medical benefits, and vocation rehabili-

tation benefits. The court concluded that the:

applicable rate of compensation [benefits] from Sanchez' injury on payments made by Molycorp from August 29, 1982 through April 30, 1983 was $246.44 weekly, the maximum compensation for disability in 1982. As a result, however, of the wrongful reduction by Molycorp, beginning May 1, 1983, the 1984 rate of compensation of $289.20 weekly applies to Sanchez, beginning May 1, 1983.

The judgment entered by the court on July 25, 1984, further specified:

Upon entry of Judgment herein, Molycorp, Inc., should pay to Sanchez all sums owing beginning May 1, 1983, to the date of entry of Judgment, at the rate of $289.20 weekly less, however, the sums heretofore paid to Sanchez for such period at the rate of $24.64 weekly. Should * * * the case of *Purcella v. Navajo Freight Lines*, 95 N.M. 306 [621 P.2d 523] (Ct.App.1980) [be overruled], and thereby reduce the applicable weekly rate of compensation to $246.44, [p]laintiff shall be allowed pre-judgment interest at the rate of 10% per annum from the date his Complaint was served, June 8, 1983, until the date of entry of this Judgment on weekly amounts due.

### I. SUFFICIENCY OF EVIDENCE

Employer challenges the sufficiency of the evidence to support the trial court's determination that plaintiff's disability was causally connected with the accident suffered by him on May 29, 1982, when he fell and struck his head. At trial, the deposition testimony of Drs. Baten, Hillman, Knoll, Rapoport, and McCreary was tendered to the court. However, the trial court excluded the testimony of the clinical psychologists, Drs. Rapoport and McCreary, concerning causation.

Employer argues that although Dr. Baten initially testified that causation existed, he later changed his opinion based on the results of a brain stem test administered January 19, 1984. Employer also argues that Drs. Hillman and Knoll, prior to stat-

ing their medical opinions concerning causation, did not have knowledge of Dr. Baten's report or opinion concerning the January 19, 1984 brain stem test administered to plaintiff.

Drs. Hillman, Knoll, and Baten all testified that plaintiff's accident probably caused the disabling symptoms which plaintiff experienced after his accident. Specifically, Dr. Hillman testified that, in his opinion, plaintiff was "totally disabled from doing any kind of work." He also testified:

Q: Do you have an opinion as to whether Francis Sanchez has some extent of organic brain damage?

A: I believe the basis for his clinical picture is some organic dysfunction, brain damage.

Q: Do you have an opinion based on reasonable medical probability as to whether the disability of [plaintiff] is a direct and natural result of the accident of May 29, 1982, that he suffered while working for Molycorp?

A: I believe that the present clinical picture and the present diagnosis is a result of the accident in May of 1982.

Q: It's your opinion that based on reasonable medical probability that his present disability, and the disability that he suffered * * * was a direct and natural result of the accident of May 29, 1982?

A: Yes. That's my medical opinion.

Similarly, Dr. Knoll, a psychiatrist, also testified in part as follows:

Q: To a reasonable degree of medical probability, would you say that [plaintiff's] disability is a direct and natural result of that accident on May 29, 1982?

A: Yes, I think it is the direct result of his accident.

Dr. Baten further testified that plaintiff was totally unable to work as a miner, and that as a medical probability the accident suffered by plaintiff caused his disability. Employer argues that because Dr. Baten subsequently changed his opinion, Dr. Ba-

ten's opinion could not be utilized to establish causation as a medical probability.

Employer contends that the testimony of Drs. Hillman and Knoll concerning their opinion as to "causation" was speculative, not adequately explained, and failed to indicate that they considered certain pertinent medical information in arriving at their opinion. We disagree.

NMSA 1978, Evid. Rule 705 (Repl.Pamp. 1983), provides:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Evidence Rule 705 does not require that an expert give all of the underlying data or facts upon which the opinion is premised unless compelled by the trial court. When a witness has been qualified as an expert in a particular field, in the absence of a ruling by the trial court requiring an expert to disclose the basis for his opinion as a prerequisite to its admission, the cross-examiner has the responsibility of eliciting material factors underlying an expert's opinion. *See also Coleman v. De Minico*, 730 F.2d 42 (1st Cir.1984); *United States v. Arias*, 678 F.2d 1202 (4th Cir.), *cert. denied*, 459 U.S. 910, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982); *Perma Research & Development v. Singer Co.*, 542 F.2d 111 (2d Cir.), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976).

An expert's opinion is not impermissibly speculative or lacking as to a factual basis where the expert gives a satisfactory explanation as to how he arrived at his opinion. *Harrison v. ICX Illinois-California Exp., Inc.*, 98 N.M. 247, 647 P.2d 880 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982). *Cf. Duran v. General Motors Corp.*, 101 N.M. 742, 688 P.2d 799 (Ct.App.1983), *cert. denied*, 101 N.M. 555, 685 P.2d 963 (1984). Causation exists within a reasonable medical probability when a qualified medical expert testifies as to his

opinion concerning causation and, in the absence of other reasonable casual explanations, it becomes more likely than not that the injury was a result of its action. NMSA 1978, § 52–1–28; *Bufalino v. Safeway Stores, Inc.*, 98 N.M. 560, 650 P.2d 844 (Ct.App.1982); *Lyon v. Catron County Commissioners*, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969), *cert. denied*, 81 N.M. 140, 464 P.2d 559 (1970).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. *Montoya v. Anaconda Mining Co.*, 97 N.M. 1, 635 P.2d 1323 (Ct.App. 1981). The testimony about causation was not speculative and constitutes substantial evidence sufficient to support the trial court's findings concerning causation. The conflicts in the testimony cited by Employer are matters for resolution by the trial court. *Worthey v. Sedillo Title Guaranty, Inc.*, 85 N.M. 339, 512 P.2d 667 (1973); *Cardenas v. United Nuclear Homestake Partners,* 97 N.M. 46, 636 P.2d 317 (Ct. App.1981).

The admission of expert testimony is within the sound discretion of the trial judge. *Harrison v. ICX Illinois-California Exp., Inc. See also Cantrell v. Dendahl*, 83 N.M. 583, 494 P.2d 1400 (Ct.App. 1972). The admission of expert testimony will not be reversed unless there has been an abuse of the trial court's discretion. *State Farm Fire & Casualty Co. v. Miller Metal Co.*, 83 N.M. 516, 494 P.2d 178 (Ct. App.1971), *cert. quashed*, 83 N.M. 740, 497 P.2d 742 (1972).

Employer's contention that the opinions of Drs. Hillman and Knoll were formulated without knowledge of the results of a second brain stem test go to the weight, not the admissibility of the experts' opinions. The court was not bound to accept the testimony of Dr. Baten over that of other experts who testified in the case.

Employer argues that the decision in *Niederstadt v. Ancho Rico Consolidated Mines*, 88 N.M. 48, 536 P.2d 1104 (Ct.

App.1975) is determinative of the issues concerning the issue of medical causation, and that since pertinent information existed about which Employee's medical experts had no knowledge, their opinions were not a proper basis upon which to support the trial court's findings. We disagree. In *Niederstadt,* plaintiff's doctor had no knowledge of the existence of a preexisting injury confirmed by another doctor. Here, Employer asserts that plaintiff's disability was secondary to an organic injury and that plaintiff's experts were not acquainted with the results of a brain stem test performed in January 1984. *Niederstadt,* however, is distinguishable from the facts of the instant case. Here, there is no evidence of the existence of any prior accident. Moreover, Dr. Knoll, employed by Employer to examine Employee, testified that he read the records of Dr. Baten (who performed the brain stem test) and that Employee's disability was the direct result of the accident.

 Under the ruling in *Worthey v. Sedillo Title Guaranty, Inc.,* it is a matter for the trier of fact to weigh the evidence, determine the credibility of witnesses, reconcile inconsistent statements, and decide the true facts. Further, the opinions of an expert even where uncontradicted, are not conclusive on facts in issue and the fact finder may reject such opinion in whole or in part. *Strickland v. Roosevelt County Rural Electric Coop.,* 99 N.M. 335, 657 P.2d 1184 (Ct.App.1982), *cert. denied,* 99 N.M. 358, 658 P.2d 433, *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983). *See also* NMSA 1978, UJI Civ. 2.13. (Repl.Pamp.1980).

Employer's first point is without merit.

## II. PREJUDGMENT INTEREST

 The judgment entered by the trial court applied the rule enunciated in *Purcella v. Navajo Freight Lines,* 95 N.M. 306, 621 P.2d 523 (Ct.App.1980) (when benefits are wrongfully terminated, the rate of compensation is fixed as of the date that the trial court determined disability). *Purcella* was expressly overruled by this court in

*Varos v. Union Oil Co. of California,* 101 N.M. 713, 688 P.2d 31 (Ct.App.1984). In *Varos,* the court held that the "holding in *Purcella* is contrary to the provisions of Section 52–1–48 \* \* \* by adding an exception [to the Workmen's Compensation Act] which in effect nullifies the statutory provision." *Id.* 688 P.2d at 33. The court in *Varos,* while recognizing that the holding in *Purcella* was equitable, concluded that whether or not such rule should be adopted is appropriately a matter within the legislature's discretion rather than the judiciary. That portion of the judgment applying the rule in *Purcella* is contrary to *Varos* and hence invalid.

Alternatively, the judgment of the district court specified that plaintiff was entitled to prejudgment interest on the reduced weekly payments, if the rule in *Purcella* was not applicable. The trial court ruled that the employer in reducing plaintiff's workmen's compensation to ten percent, acted unfairly and "solely to further its own interests."

The issue of whether an award of prejudgment interest may be granted in an action for workmen's compensation benefits has not been squarely decided by the appellate courts in this jurisdiction. The Workmen's Compensation Act contains no specific reference to the allowance of claims for prejudgment interest, however, NMSA 1978, Section 52–1–38 provides that judgments in workmen's compensation cases "shall be governed by the laws of this state with respect to judgments or executions in civil cases."

New Mexico has previously approved the award of interest on judgments in workmen's compensation actions. *See Genuine Parts Co. v. Garcia,* 92 N.M. 57, 582 P.2d 1270 (1978); *Trujillo v. Beaty Electric Co.,* 91 N.M. 533, 577 P.2d 431 (Ct.App.1978); *Ruiz v. City of Albuquerque,* 91 N.M. 526, 577 P.2d 424 (Ct.App.), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978); *Medina v. Wicked Wick Candle Co.,* 91 N.M. 522, 577 P.2d 420 (Ct.App.1977). However, these cases awarded interest from the date of

judgment and did not address the issue of prejudgment interest.

The legislature enacted a general statute, NMSA 1978, Section 56–8–4 (Cum. Supp.1984), permitting an award of prejudgment interest in civil actions in the discretion of the trial court. The 1983 amendment (Laws 1983, ch. 256, § 2), provides in applicable part:

A. Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of fifteen percent per year, unless the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at the rate specified in the instrument.

B. *The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things:*

(1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and

(2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

C. Nothing contained in this section shall affect the award of interest or the time from which interest is computed as otherwise permitted by statute or common law. [Emphasis added.]

Plaintiff's complaint in this action was filed on June 6, 1983. However, Section 56–8–4 permitting an award of prejudgment interest became effective after the filing of plaintiff's complaint and therefore the language of the amendment cannot serve to authorize prejudgment interest in this case.[1] *State v. Chavez,* 79 N.M. 741, 449 P.2d 343 (Ct.App.1968). Prior to the enactment of Laws 1983, ch. 254, the language of Section 56–8–4 contained no provision authorizing an award of prejudgment interest.

The provisions of Section 56–8–4 authorizing an award of prejudgment interest, therefore, are not applicable to the judgment obtained by plaintiff under the facts of the instant case because the provisions of Section 56–8–4 permitting an award of prejudgment interest were not in effect at the time of the filing of this case. *See Garcia v. J.C. Penney Co.,* 52 N.M. 410, 200 P.2d 372 (1948). Under N.M. Const. article IV, section 34, the legislature may not affect the right or remedy of a litigant, or change the rules of procedure in any pending case. As held in *USLife Title Insurance Co. v. Romero,* 98 N.M. 699, 652 P.2d 249 (Ct.App.), *cert. quashed,* 98 N.M. 762, 652 P.2d 1213 (1982), if a case is pending at the time that an amended statute is enacted, the prior statute applies to the case.

Since workmen's compensation proceedings are statutory remedies, no common law right to prejudgment interest exists. *E.g., Garza v. W.A. Jourdan, Inc.,* 91 N.M. 268, 572 P.2d 1276 (Ct.App.), *cert. denied,* 91 N.M. 249, 572 P.2d 1257 (1977) (procedures and remedies within workmen's compensation statutes are *sui generis* and are not affected by the common law).

That portion of the judgment awarding workmen's compensation benefits to plaintiff is affirmed. The award of compensation payments under the *Purcella* rule and allowance of prejudgment interest is reversed. This cause is remanded with instructions to the trial court to enter an amended judgment consistent herewith. Plaintiff is awarded $1,500 for the services of his attorney on appeal and costs incident hereto.

IT IS SO ORDERED.

NEAL and BIVINS, JJ., concur.

---

**1.** Laws 1983, chapter 254, when enacted did not contain an emergency clause. As provided in N.M. Const. article IV, section 23, the amendment became effective ninety days following its enactment in the session ending March 19, 1983, and subsequent to the time plaintiff filed his workmen's compensation action herein.